PEOPLE *v.* LUCE.

1. CRIMINAL LAW—TAKING INDECENT LIBERTIES—EVIDENCE—TESTIMONY OF MOTHER AS TO COMPLAINT OF CHILD.

In a prosecution for taking indecent liberties with the person of a female child eleven years old, testimony of the mother that the child made prompt complaint to her was properly admitted.

2. SAME—CROSS-EXAMINATION—TESTIMONY AS TO IRRELEVANT MATTERS FOR PURPOSE OF TESTING CREDIBILITY.

It is permissible in this class of cases to interrogate a witness on cross-examination as to matters wholly irrelevant to the issue for the purpose of testing his memory or sincerity or showing his bias, prejudice, or interest, but not for the purpose of eliciting answers which may be contradicted and thus discrediting him.

3. SAME—TESTIMONY AS TO OTHER OFFENSES.

Where defendant denied committing the offense with complaining witness "or anybody else," it was permissible to cross-examine him thereon, but on his denial of the commission of a like offense with a certain other child it was error to permit the other child to testify to its commission, although the jury were instructed to consider it only as bearing on his credibility.

4. SAME—TRIAL—GOOD CHARACTER—INSTRUCTIONS.

Where defendant has given evidence of good character, he is entitled to appropriate instructions on request, although a neglect to give such instruction, in the absence of a proper request therefor, is not erroneous.

Exceptions before judgment from Calhoun; North (Walter H.), J. Submitted April 16, 1920. (Docket No. 118.) Decided June 7, 1920.

C. H. Luce was convicted of taking indecent liberties with the person of a female child. Reversed.

*Clyde Cortright,* for appellant.

*Adrian F. Cooper,* Prosecuting Attorney, and *James Cleary,* Assistant Prosecuting Attorney, for the people.

SHARPE, J. The defendant was convicted of taking indecent liberties with the person of Beulah Walker, a female child 11 years old, on July 12, 1919. It was her claim that when she went to his shoe repairing shop he took her on his lap, placed his hand under her outer clothing and fondled her private parts, and that she at once went home and told her mother about it. The mother was permitted to testify, against objection, that such complaint was made.

The defendant, in answer to a question as to whether the little girl's story was true, answered:

"It has absolutely no truth in it; absolutely. Never done any such thing to no person; not to her nor anybody else."

On cross-examination, the prosecution inquired as to whether he had not done the same thing to a little girl named Collard on or about May 17th. This he denied. In rebuttal, the prosecution called Frances Collard, who was permitted to testify that defendant took indecent liberties with her in his shop. This was admitted as bearing on his credibility, and in the charge the trial judge warned the jury to so consider it. Four character witnesses were sworn for defendant, but their testimony is not set out in the record.

1. The testimony of the mother that the child made complaint to her was properly admitted. *People* v. *Harrington,* 186 Mich. 482.

2. Was the testimony of Frances Collard admissible for the purpose for which it was received? It is permissible in this class of cases to interrogate a witness on cross-examination as to matters wholly irrelevant to the issue in the case for the purpose of testing his memory or sincerity or showing his bias, prejudice

or interest, but not for the purpose of eliciting answers which may be contradicted and thus discrediting him. This rule the trial judge evidently had in mind. The defendant, when examined by his own counsel, voluntarily injected into his answer the statement that he had "never done any such thing to no person; not to her nor anybody else." This part of his answer was not responsive to the question put to him. It opened the door to the cross-examination which followed, but we do not think it permitted the calling of other witnesses to contradict the statement thus volunteered. The danger of admitting such testimony is twofold. *First,* the defendant is usually unprepared to produce testimony supporting his statement, and, *second,* an issue alien to that to be decided is presented to the jury. While they were carefully instructed that they should only consider this testimony as affecting the credibility of the defendant, yet, to determine its effect, they must find the fact as to whether he or Frances was telling the truth about it. If the course pursued was justified, cases may arise in which several such collateral issues would be presented. If a defendant charged with larceny should make a similar general denial, the prosecution would be permitted to present to the jury, not by one but by many witnesses, proofs tending to show that he had on other occasions committed larceny, and thus a multiplicity of issues would be presented for the jury to pass upon. We think the safer rule to follow is to restrict the contradiction of such matters as may be so elicited to the cross-examination of the defendant himself.

Counsel for the prosecution rely on *People* v. *Kenyon,* 201 Mich. 647, to justify the admission of this testimony. We think it easily distinguishable. In that case the defendant was charged with practicing medicine without a license, in violation of section 6730,

2 Comp. Laws 1915. He was examined by his counsel as follows:

"*Q.* Have you ever held yourself out as being a physician?

"*A.* No, sir.

"*Q.* As a surgeon?

"*A.* No, sir; never in the world."

The prosecution was permitted to show that he had written letters signed "Dr. Levi Kenyon," the envelopes of which bore the return card "Dr. Levi Kenyon, Bellevue, Mich." This was held not to be reversible error. Section 6732 provides that the use of the word "doctor" or its abbreviation as a prefix to the name of any person shall be *prima facie* evidence of practicing medicine within the meaning of the act. The matter inquired into was not therefore collateral to the charge on which the defendant was being tried.

In *Bullock* v. *State,* 65 N. J. Law, 557 (47 Atl. 62, 86 Am. St. Rep. 668), a similar question was presented. The defendant was being tried for murder and on examination by his counsel said he had "never had any trouble with any one." On cross-examination, the prosecutor asked him whether he did not have a dispute with one Campbell and draw a razor on him in the stall and attack him with a pitchfork. This he denied, and in rebuttal Campbell was permitted to so testify. This was held to be prejudicial error, and on it alone a reversal was had and a new trial granted. See, also, *People* v. *Ascher,* 126 Mich. 637, 643; *People* v. *Williams,* 159 Mich. 518.

In this class of cases the only testimony usually produced is that of the complaining witness and the defendant. Facts tending to show the commission of a similar offense on another child, on some other occasion, though restricted by the court to its bearing on his credibility, cannot but prejudice the jury and

unconsciously lead them to the conclusion that he is in the habit of taking such liberties with little girls. The probability is strong that he would thus lose the benefit of the reasonable doubt to which he is entitled.

3. The trial judge omitted to instruct the jury as to the weight to be given to the proof of good reputation offered by defendant. No request therefor was given. We think the rule stated in 16 C. J. p. 980 is a safe one to follow:

"Where defendant has given evidence of good character, he is entitled to appropriate instructions on request, although a neglect to give such an instruction in the absence of a proper request therefor is not erroneous."

For the reasons stated, the verdict will be set aside and a new trial granted.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.