PEOPLE v HINES

Docket No. 78-317. Submitted November 16, 1978, at Detroit.—Decided January 16, 1979. Leave to appeal denied, 406 Mich 934.

Abner Hines was convicted of conspiracy to commit armed robbery and of felony murder, Recorder's Court of Detroit, James Del Rio, J. His convictions were affirmed by the Court of Appeals, Docket Nos. 22967, 22968, unpublished per curiam opinion, July 22, 1976. Defendant applied to the Supreme Court for leave to appeal, which was denied, 399 Mich 802 (1977). Defendant then filed a delayed motion for new trial in Recorder's Court. That motion was denied, Donald L. Hobson, J., and defendant appeals by leave granted, raising some issues which were not before the Court of Appeals in the previous appeal. *Held:*

1. The defendant was not prejudiced by the prosecution's calling of two witnesses who refused to testify, because the two had previously agreed to testify and the court cannot say that the witnesses' refusal to testify should have been apparent to the prosecutor prior to calling the witnesses, because there was no objection by defense counsel, and because the evidence against the defendant was overwhelming.

2. The trial court's instructions to the jury on malice would be erroneous under current case precedent because the jury was instructed that the only intent necessary for the felony murder was that necessary for the robbery. However, this error does not require reversal because the case was tried prior to a decision of the Court of Appeals which requires that malice be set forth as a separate element when the charge is felony murder and because there was no specific request for an instruction on malice.

3. Failure of the trial court to give an instruction on alibi was not reversible error where no alibi instruction was re-

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 309.
[2] 81 Am Jur 2d, Witnesses §§ 28, 33.
[3] 40 Am Jur 2d, Homicide § 50.
[4] 40 Am Jur 2d, Homicide §§ 561, 562.
[5] 75 Am Jur 2d, Trial § 729.

quested and where proper instructions were given on the elements of the offense and on reasonable doubt.

Affirmed.

1. APPEAL AND ERROR — LEAVE TO APPEAL — DENIAL OF LEAVE — MERITS OF CASE.

An appellate court's denial of leave to appeal does not constitute a ruling on the merits of a case.

2. WITNESSES — CRIMINAL LAW — PRIVILEGE — PREJUDICE.

Prejudice to a defendant is presumed where a prosecutor calls a witness knowing that the witness will claim a valid privilege not to testify; however, there was no prejudice where two prosecution witnesses refused to testify after having agreed to testify as part of plea bargains, where the prosecutor testified at an evidentiary hearing that she had no knowledge that the witnesses would refuse to testify, where the court cannot say that the witnesses' refusal should have been apparent to the prosecutor, where there was no objection by defense counsel, and where there was overwhelming evidence of the defendant's guilt.

3. HOMICIDE — MURDER — MALICE.

Malice has a specific meaning as an element of murder: that the defendant either intended to kill or that he knowingly created a very high risk of death with knowledge of the probable consequences, under circumstances which did not justify, excuse, or lessen the crime.

4. CRIMINAL LAW — INSTRUCTIONS TO JURY — FELONY MURDER — MALICE — COURT PRECEDENT — APPEAL AND ERROR.

A jury instruction, in a prosecution for felony murder arising from an armed robbery, which stated that the only intent required for murder was that necessary for the robbery would be erroneous under current case precedent; however, reversal of the defendant's conviction is not necessary where the trial took place prior to a decision of the Court of Appeals which directed that malice must be set forth as a separate element when the charge is felony murder and where there was no specific request for an instruction on malice.

5. APPEAL AND ERROR — CRIMINAL LAW — INSTRUCTIONS TO JURY — ALIBI — REQUEST FOR INSTRUCTION.

Failure of a trial court to give an instruction on alibi, absent a request for such an instruction, is not reversible error where proper instructions are given on the elements of the offense and on reasonable doubt.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and BASHARA, JJ.

N. J. KAUFMAN, P.J. Following a jury trial held January 6 to 9, 1975, defendant was convicted of conspiracy to commit armed robbery, in violation of MCL 750.529; MSA 28.797 and MCL 750.157a; MSA 28.354(1), and felony murder, in violation of MCL 750.316; MSA 28.548. His convictions were affirmed in an unpublished per curiam opinion released July 22, 1976 (Docket Nos. 22967-68). He then applied for leave to appeal to the Supreme Court and the application was denied January 19, 1977. *People v Hines,* 399 Mich 802 (1977). Defendant next filed an application for delayed appeal in this Court. We granted leave on April 5, 1978.

The information in this case originally named five persons as defendants: Defendant Hines, Leonard Bradford, Alvin Dent, Kerry Donnell, and Larry Smith. Prior to trial, Dent, Donnell, and Smith pled guilty to conspiracy to commit armed robbery. As part of their plea bargains, each promised to testify against the remaining defendants. Defendant Hines and Leonard Bradford were then tried jointly. The prosecution's evidence showed that around midnight on February 18, 1974, the five defendants planned to and did rob a party store in Detroit. One of the robbers shot and killed Leonard McNeal, the store's proprietor.

Following the eyewitness and medical testimony,

the prosecutor called Alvin Dent to the stand. The following colloquy occurred:

"Q *[By the Prosecutor]:* Tell this Court and the jury your name please.

"A Alvin Dent.

"Q Originally, were you one of the defendants in this matter?

"A Yes.

"Q Are you represented today by an attorney?

"A Yes, I am.

"Q Is he present?

"A Yes.

"THE COURT: Just a moment. We would put counsel on the record. You want to state your name on the record, counsel?

"MR. HALL: I think the witness can do that your Honor. I am present in the courtroom. I have advised him and discussed this matter with him and if your Honor please, you may proceed.

"MS. CLARKE *[Prosecutor]:* I think the witness can do that very much your Honor. Mr. Dent is represented by Attorney Elliot Hall who is presently seated in the courtroom and any questions in connection with this matter before we go forward can —

"THE COURT: That's all right. Thank you very much.

"Q (By Ms. Clarke, continuing): Have you had an opportunity to discuss this matter prior to testifying now with Mr. Hall your attorney?

"A Yes.

"Q Now, do you recall the date of February 18, 1974?

"A Like I refused to testify on the grounds it might incriminate me.

"Q Are you doing this on the advice of counsel?

"A Yes.

"Q Do you — are you willing to answer any questions regarding this matter?

"A No.

"Q And, for what reason?

"A On the grounds that it might incriminate me.

"Q And can you —

"MS. CLARKE: I offer the witness, your Honor."

The prosecutor then called Larry Smith to testify. Smith denied that he and the others had robbed the store.

Next, the prosecutor called Kerry Donnel to the stand. Donnell's responses were the same as Dent's had been: he refused to answer any questions on grounds of self-incrimination, and he was doing so on the advice of counsel.

The jury returned verdicts of guilty against both defendants. Following this Court's affirmance and the Supreme Court's denial of leave, Hines filed a motion for an evidentiary hearing and for a new trial in the circuit court. He asserted that the prosecutor had known that Dent and Donnell would claim their privilege. Pursuant to defendant's motions, an evidentiary hearing was held in May, 1977. The prosecutor testified that she had had no idea that the witnesses would claim the Fifth Amendment, while Donnell testified that the prosecutor had indeed had such knowledge. The trial court denied defendant's delayed motion for new trial on the basis that defendant had already presented the issue in the appellate courts.

Our examination of the record discloses that defendant did not raise this issue in his appeal of right. He did raise it in his application to the Supreme Court; however, denials of leave do not constitute rulings on the merits of a case. *Frishett v State Farm Mutual Automobile Ins Co,* 378 Mich 733 (1966), *Malooly v York Heating & Ventilating Corp,* 270 Mich 240, 247; 258 NW 622 (1935). Piecemeal appeals are not favored, *People v Ber-*

*gin,* 63 Mich App 526, 529; 234 NW2d 687 (1975), but since this Court granted defendant's delayed application for leave to appeal, we will now proceed to determine the issue.

In *People v Giacalone,* 399 Mich 642, 645; 250 NW2d 492 (1977), the Court held that prejudice is presumed where a prosecutor calls a witness knowing that the witness will claim a valid privilege not to testify. In the case at bar the prosecutor stated that she did not know that Dent and Donnell would take the Fifth Amendment. Since both had promised to testify as part of their plea bargains, the prosecutor had a right to expect that they would testify. Furthermore, in an earlier trial involving Bradford, Dent (the first accomplice called in the present case) *had* testified. In the instant trial the second accomplice called (Smith) did not claim the privilege, and in fact gave testimony exculpating the defendants. Thus, we cannot say, as the Court did in *People v Savard,* 73 Mich App 175, 179; 250 NW2d 565 (1977), that it should have been apparent to the prosecutor that Dent, and later Donnell, would claim their privilege.

Moreover, we note that defense counsel failed to object. See *Namet v United States,* 373 US 179; 83 S Ct 1151; 10 L Ed 2d 278 (1963). It is quite possible that this was a conscious choice of trial strategy, *i.e.,* to allow the accomplices to testify in the hope that their testimony would be favorable to Hines. Finally, in view of the overwhelming evidence of Hines' guilt, any error can be said to be harmless beyond a reasonable doubt. See *People v McNary,* 43 Mich App 134, 140; 203 NW2d 919 (1972), *aff'd in part, rev'd in part on other grounds,* 388 Mich 799 (1972), *Namet v United States, supra.*

Next, defendant argues that the trial court's

instructions on malice were erroneous. The court stated the elements of murder as follows:

"One, that Mr. McNeal was alive and well prior to the incident. Two, that he is now deceased. Three, that the death was caused by the actions of one of the five defendants. Four, that his death occurred while in the commission or attempt *[sic]* commission to commit a robbery.

"It is not necessary to show that the killing was intended or even that the act resulted *[sic]* in death was intended. It is sufficient to show that the robbery was intended and that the act which resulted in the death of Mr. McNeal was committed by one of the persons committing the robbery."

This Court has split as to whether malice is imputed from the felony or must be submitted to the jury as a separate element. Compare, for example, *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), and *People v Wilson,* 84 Mich App 636, 639-655; 270 NW2d 473 (1978) (N. J. KAUFMAN, J., dissenting). Malice has a very specific meaning as an element of murder: that defendant either intended to kill or that he knowingly created a very high risk of death with knowledge of the probable consequences, under circumstances which did not justify, excuse, or lessen the crime. CJI 16:3:01; *People v Fountain, supra,* p 493, fn 1; *People v Goodard (On Rehearing),* 86 Mich App 537; NW2d (1978) (Opinion of WALSH, P.J.). The trial court's instructions in the present case did not even begin to approach this definition. The jury was told in no uncertain terms that the only intent or *mens rea* required for murder was that necessary for the robbery. This was erroneous.

Nevertheless, the murder conviction should not be reversed. The instant trial took place prior to the decision in *Fountain, supra.* Although the *Fountain* Court perceived its holding as following directly from previous decisions of the Michigan Supreme Court, a review of the relevant case law demonstrates that the Supreme Court's position on malice is not so clear. See *People v Wilson, supra* (N. J. KAUFMAN, J.,dissenting). It is untenable to state, as the Court did in *Fountain,* that Michigan has "no felony murder doctrine". Unquestionably, *Fountain* was the first Michigan case to explicitly decide that the court's instructions must set forth malice as a separate element when the charge is felony murder. For this reason reversal is not warranted in cases tried prior to *Fountain,* at least not in the absence of a specific request for an instruction on malice. There was no such request here.

Defendant also claims error in the trial court's failure to instruct that defendant need not prove his alibi defense in order to prevail with the jury. Defendant did not request such an instruction at trial. In *People v Burden,* 395 Mich 462, 467; 236 NW2d 505 (1975), the Court held that it is not reversible error to fail to give an unrequested alibi instruction, as long as proper instructions are given on the elements of the offense and reasonable doubt. Absent the felony murder-malice problem considered above, these requirements were satisfied.

Defendant also claims that he was denied a fair trial by the prosecutor's action of informing the jury that defendant's accomplices had pled guilty. This issue was decided adversely to defendant in his appeal of right, and this Court's determination is the law of the case. See *Allen v Michigan Bell*

*Telephone Co,* 61 Mich App 62, 65; 232 NW2d 302 (1975), *lv den,* 395 Mich 793 (1975).

Defendant's remaining arguments have been considered by the Court and found to be without merit.

Affirmed.