PEOPLE v McKINNEY

Docket No. 64695. Decided February 23, 1981. On application by the defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals, vacated the conviction and sentence, and remanded the case for a new trial.

Dennis R. McKinney was convicted by a jury in Saginaw Circuit Court, Fred J. Borchard, J., of delivery of heroin. The defendant testified on his own behalf, specifically denying that he had ever used or sold heroin, but stated that he roomed with a man who had narcotics paraphernalia in his room and who had used his automobile at the time of the offense charged. During cross-examination of the defendant the assistant prosecutor, over objection by defense counsel that the inquiry was immaterial, inquired at length as to the defendant's knowledge of narcotics paraphernalia and drug use in general. The Court of Appeals, T. M. Burns, P.J., and J. H. Gillis and Bashara, JJ., affirmed the defendant's conviction in an unpublished per curiam opinion (Docket No. 78-4083). The defendant applies for leave to appeal. *Held:*

1. Whether analyzed as a matter of materiality or relevancy, evidence proffered at trial must bear a particularly sufficient correspondence or connection to a case before it can be properly admitted. First, the matter sought to be established by the evidence must be "in issue"; and, second, the proffered evidence must have probative value with respect to that matter.

2. In this case, the defendant claims that the evidence sought to be elicited by the prosecutor's cross-examination was "immaterial" or not "relevant evidence" within the meaning of the Michigan Rules of Evidence. It is plain that the prosecutor intended to illustrate and emphasize the defendant's intimate familiarity with both heroin and the details of heroin use. Evidence of that familiarity would have *a* tendency, however slight, to contradict the defendant's statement on direct examination that he had never used or sold heroin. Thus, the evidence was relevant, although minimally so. An effect of the contradiction would be to impugn the defendant's credibility. Since it is axiomatic that the credibility of a witness is always

a fact that is of consequence to the determination of the action, the evidence to which the disputed cross-examination was directed was material. Therefore, the real issue is whether the probative value of the evidence in question substantially outweighed its untoward effects.

3. The prejudice engendered by the prosecutor's questions was of a nature and degree that would have warranted preclusion of the questions and answers under the Michigan Rules of Evidence. The cross-examination created a risk that the jury would rely upon the defendant's purported familiarity with the incidents of heroin use in reaching a decision as to whether the defendant delivered heroin to the person, at the time, and at the place charged in the information. That risk not only substantially outweighed, but overwhelmed the probative value of the cross-examination and was, therefore, unacceptable. Furthermore, the risk was aggravated by the fact that the defendant was required to perform a pantomime to demonstrate how heroin is hypodermically injected into the arm. The likelihood that a verdict of guilty would be founded upon an improper basis was simply too great to justify receiving the evidence for its minimal relevancy.

Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Linda Berns Wright,* Appellate Prosecuting Attorney, for the people.

State Appellate Defender (by *R. Steven Whalen)* for defendant.

PER CURIAM. Defendant was convicted by a jury of delivery of heroin[1] and sentenced to 10 to 20 years imprisonment. The Court of Appeals affirmed. Because of an unfairly prejudicial line of inquiry pursued by the prosecutor during his cross-examination of defendant, we reverse the Court of Appeals, vacate the conviction and sentence, and remand the case for a new trial.

[1] MCL 335.341(1)(a); MSA 18.1070(41)(1)(a) (current version is MCL 333.7401[2][a]; MSA 14.15[7401][2][a]).

## I

Defendant testified in his own behalf. He specifically denied ever using or selling heroin. While cross-examining him, the prosecutor inquired at great length and in detail about defendant's knowledge of heroin, its use, and the use of paraphernalia connected with the use of heroin. Whenever the defense counsel objected to this line of questioning, his objections were overruled. A sample of the challenged cross-examination follows:

*"Q. [Assistant Prosecuting Attorney]:* Did you ever see Michael Pierrie [the government informant] use heroin?

*"A. [Defendant]:* Yes, I did.

*"Q.* What did he use heroin—did he swallow it or what did he do?

*"A.* He was injecting it in his arm.

*"Q.* What did he use to inject it into his arm?

*"A.* A needle.

*"Q.* Did he do anything before he stuck the needle in his arm?

*"A.* He had a rope or something around his arm.

*"Q.* Could you demonstrate, using this rubber band? Can you demonstrate what Michael Pierrie did to his arm with that rope? You could take off your jacket if it would be easier.

"Did Michael Pierrie have on a long-sleeved shirt that time he used heroin?

*"A.* No, it was in the summer.

*"Q.* Could you roll your sleeve for us, please?

*"A.* It was just tied around—he was sitting at the table and he tied it around his arm.

*"Q.* Then what did he do?

*"A.* I don't know what he did. He had the needle and the rope around his arm.

*"Q.* Where did he put the needle?

"(Witness indicating.)

"*Q.* Putting a needle in there would leave a mark, wouldn't it?

"*A.* I'm pretty sure it would.

"*Q.* Do you know what needle tracks are?

"*A.* Yes, I have seen them.

"*Q.* What are needle tracks?

"*A.* Some marks you get from using a needle.

"*Q.* Where did you see these needle tracks?

"*A.* It was on a—like, you'd be out; people have on short sleeve shirts, you could see them. That's the way you notice. Somebody else use heroin and that.

"*Q.* Now, let's see; heroin is a—like we have had marked here; this is a powdery sort of thing. This is a little dried out, but it's generally powder, isn't it?

"*A.* Yes.

"*Q.* Is heroin always brown or is it sometimes white?

"*[Defense Counsel]:* Your Honor, I will object to that unless Mr. Klumpp establishes that Mr. McKinney is an expert on that.

"*The Court:* I will overrule it. Proceed.

"*A.* Give me the question again.

"*Q. [Assistant Prosecuting Attorney]:* This heroin is brown, is it not?

"*A.* Yes.

"*Q.* Brown heroin comes from Mexico, generally, in this area?

"*A.* I wouldn't know.

"*Q.* Is heroin ever white?

"*A.* I wouldn't know that, either.

"*Q.* What is done with the heroin that is powderized before you can inject it into your arm?

"*A.* I guess water is put in it.

"*Q.* Do they just add water to it and then stir it up and put it in a syringe and inject it into their arm?

"*A.* I wouldn't know how it was done.

\* \* \*

"*Q.* Have you ever heard the phrase in relation to a heroin measuring device, a Mac spoon?

"*A.* Yes, I have heard that.

"*Q.* And isn't it true that a Mac spoon is one of these little MacDonald spoons that you use to measure a quantity of heroin that you can inject into your arm at one time, just a little small amount?

"*A.* Yes, I've seen spoons.

"*Q.* It would take several of those little MacDonald spoons to fill up a quarter teaspoon such as you saw on the dresser, wouldn't it?

"*A.* I wouldn't know.

"*Q.* A MacDonald spoon is pretty small, isn't it?

"*A.* Yes.

"*Q.* Have you ever heard of the phrase, 'a $10 paper', or 'a $20 paper' in relation to a quantity of heroin on the street?

"*A.* Yes.

"*Q.* And isn't it true that a $10 or a $20 paper would be something that would be a usable quantity of heroin that you could inject at one time without killing yourself?

"*A.* I don't know. I never used it so I wouldn't know.

"*Q.* Have you ever heard of anyone overdosing on heroin and dying or becoming quite ill from it?

"*A.* Yes.

"*Q.* And that would be because they put too much heroin in their system at once and their body couldn't take it?

"*A.* Yes.

"*Q.* Have you ever seen anyone overdose?

"*A.* No. Well, yes.

"*Q.* When did you see someone overdose on heroin?

"*A.* I was in the doctor's office and three guys brought a guy in that overdosed.

"*Q.* And isn't it true that this 10 or $20 paper would be something that you would pay 10 or $20 for?

"*A.* I wouldn't know.

"*Q.* Have you ever heard of anyone paying $210 for three street grams of heroin and using it at one time?

"*A.* No, I never heard of that.

"*Q.* Isn't it true that that quantity of heroin would probably result in an overdose?

"*A.* I'm pretty sure if they say it's as much as they say it is.

"*Q.* Isn't it true that when people buy heroin to inject into themselves it is not 100 percent heroin?

"*[Defense Counsel]:* Your Honor, I will object to this line of questioning.

"*The Court:* I will overrule it. Proceed.

"*A.* I wouldn't know."

## II

The defense counsel objected at trial that the foregoing line of inquiry was "immaterial". As stated, his objections were overruled and the questions permitted, and answers given allowed to stand.

Whether analyzed as a matter of materiality or relevancy, evidence proffered at trial must bear a particularly sufficient correspondence or connection to a case before it can be properly admitted. This threshold requirement represents the application of two distinct rules: first, the matter sought to be established by the evidence must be "in issue";[2] and, second, the proffered evidence must have probative value with respect to that matter.[3]

---

[2] *People v Oliphant,* 399 Mich 472, 489; 250 NW2d 443 (1976), quoting McCormick, Evidence (2d ed), § 185, p 434.

Focus upon what is "in issue", "in dispute", or "provable" in a given case has generally been associated with the concept of materiality. As a noted authority observed, "We begin, then, with the notion of materiality, the inclusion of certain questions or propositions within the range of allowable proof in the lawsuit". McCormick, Evidence (2d ed), § 185, pp 434-435. Accordingly, a matter that is "in issue" is material. In contemporary legal parlance, a material matter is described as "any fact that is of consequence to the determination of the action". MRE 401; FRE 401.

[3] This demand is one of simple, logical relevancy, measured by logic, common experience, and common sense, apart from legal technicalities. See McCormick, Evidence (2d ed), § 185, pp 436-437, fn 19. It concerns "the tendency of evidence to establish a proposition which it is offered to prove". *Id.,* p 435.

These rules, at the price of sacrificing clarity of analysis, are often formulated as one. For instance, in *People v Becker,* 300 Mich 562, 565; 2 NW2d 503 (1942), it was said that the general rule is that evidence "is admissible if helpful in throwing light upon any material point in issue".[4]

The threshold requirement of admissibility has more recently found expression in the more precise phraseology of MRE 401 under the term "relevant evidence":

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In the case before us, the defendant claims on appeal that the evidence sought to be elicited by the prosecutor's cross-examination of defendant was "immaterial" or not "relevant evidence" within the meaning of MRE 401.[5] We disagree.

It is plain that the prosecutor intended to illustrate and emphasize defendant's intimate familiarity with both heroin and the details of heroin use. Evidence of that familiarity would have *a* tendency, however slight, to contradict defendant's statement on direct examination that he had never used or sold heroin. Thus, the evidence was relevant, although minimally so. An effect of the contradiction would be impugnment of defendant's

---

[4] Accord, *People v Wilkins,* 408 Mich 69, 72-73; 288 NW2d 583 (1980); see *People v Nichols,* 341 Mich 311, 331; 67 NW2d 230 (1954) (pre-MRE), quoting *Stroh v Hinchman,* 37 Mich 490, 497 (1877): "All evidence should have some legitimate tendency to establish or disprove the fact in controversy, and whatever has no such tendency should be rejected."

[5] The Michigan Rules of Evidence were in effect during defendant's trial.

credibility. Since it is axiomatic that the credibility of a witness is always a "fact that is of consequence to the determination of the action", the evidence to which the disputed cross-examination was directed was therefore material.

We see this, therefore, not as a question of the relevancy or materiality of the evidence. Instead, the real issue involves the application of MRE 403: Was the probative value of the evidence in question substantially outweighed by its untoward effects? MRE 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[6]

Even though the evidence that the prosecutor attempted to establish on cross-examination of defendant was relevant, we are convinced that the prejudice engendered by the prosecutor's questions was of a nature and degree that warranted preclusion of the questions and answers under MRE 403. It is clear to us that the cross-examination created a risk that the jury would rely upon defendant's purported familiarity with the incidents of heroin use in reaching a decision as to whether defendant delivered heroin to the person, at the time, and at the place charged in the information. This risk not only substantially outweighed but overwhelmed the probative value of the cross-examination and was, therefore, unacceptable. Furthermore, the risk was aggravated by the fact that defendant was required to perform a pantomime to demon-

---

[6] Accord, *People v DerMartzex*, 390 Mich 410, 415 and fn 3; 213 NW2d 97, 100 and fn 3 (1973) (pre-MRE).

strate how heroin is hypodermically injected into the arm. The likelihood that a guilty verdict would be founded upon an improper basis was simply too great to justify receiving the evidence for its minimal relevancy.

Accordingly, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals, vacate defendant's conviction and sentence, and remand the case to the Saginaw County Circuit Court for a new trial.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.