## PEOPLE v DUFF

Docket No. 83867. Submitted May 11, 1987, at Detroit. Decided October 28, 1987. Leave to appeal applied for.

Wayne M. Duff was convicted of murder in the first degree following a jury trial in Wayne Circuit Court, Maureen Pulte Reilly, J. The prosecution's theory of the case was that defendant stabbed the victim and that the stabbing arose out of a prior confrontation between the victim and the defendant. Defendant asserted the defense of alibi and attempted to show that the witnesses were mistaken in their identification. Defendant appealed. The matter was remanded to the trial court for an evidentiary hearing on defendant's claim of ineffective assistance of trial counsel. The trial court concluded that defendant was not denied effective assistance of counsel.

The Court of Appeals *held:*

1. The record fails to establish that the noise in the courtroom during the trial resulted in the denial of a fair trial.

2. Since there were no objections to the claimed incidents of prosecutorial misconduct in the examination of witnesses, appellate review is precluded absent a showing of manifest injustice. Neither individually nor collectively do the claimed incidents constitute prosecutorial misconduct which would render the verdict returned manifestly unjust.

3. The trial court did not abuse its discretion in limiting the questioning of the arresting officer relative to his personal relationship with the victim's sister.

4. It was not error mandating reversal for the trial court to fail to give sua sponte instructions on the defense of alibi and the use of character evidence, since the jury was fully instructed on the elements of the crime and the prosecutor's burden of proof with respect to each and every element.

5. The failure of trial counsel to pursue an investigation of

REFERENCES

Am Jur 2d, Appeal and Error §§ 315, 624-627, 881, 896.

Am Jur 2d, Trial §§ 189 *et seq.*; 729 *et seq.*

Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.

Duty of court, in absence of specific request, to instruct on subject of alibi. 72 ALR3d 547.

the possibility of an intervening cause for the victim's death or to pursue the question of whether defendant had the necessary specific intent did not constitute ineffective assistance of counsel. That defense counsel chose to pursue only the defenses of alibi and misidentification as a matter of trial strategy did not render his assistance of counsel so deficient as to constitute ineffective assistance of counsel.

Affirmed.

SHEPHERD, J., dissented. He would remand for an evidentiary hearing at which defendant would have the opportunity to present evidence to support his claim that the victim's death was induced in the hospital through the use of drugs supplied by visitors. Appellate counsel should have the right to subpoena witnesses, including expert witnesses, at government expense if necessary.

1. CRIMINAL LAW — TRIAL — NOISE.

Extraneous noise in the courtroom during a criminal trial does not mandate reversal of a conviction absent a showing that the noise so interrupted the proceedings that the defendant was denied a fair trial.

2. APPEAL — PROSECUTORIAL MISCONDUCT — PRESERVING ISSUE.

The failure to object at trial to alleged acts of prosecutorial misconduct precludes appellate review absent a showing that the failure to review would result in manifest injustice.

3. EVIDENCE — APPEAL.

The admissibility of evidence is a question that rests in the trial court's discretion and the exercise of the court's discretion will not be overturned on appeal unless there has been a clear abuse of that discretion.

4. APPEAL — CRIMINAL LAW — JURY INSTRUCTIONS — ALIBI — REQUEST FOR INSTRUCTION.

Failure of a trial court to give an instruction on alibi, absent a request for such an instruction, is not error mandating reversal where proper instructions are given on the elements of the offense and on reasonable doubt.

5. CRIMINAL LAW — TRIAL STRATEGY — APPEAL — ASSISTANCE OF COUNSEL.

A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel, and the Court of Appeals is reluctant to substitute its judgment for that of a trial counsel in matters of trial strategy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan*), for defendant on appeal.

Before: D. F. WALSH, P.J., and SHEPHERD and DOCTOROFF, JJ.

PER CURIAM. Defendant appeals as of right from his conviction by a jury of first-degree murder, MCL 750.316; MSA 28.548, following which he was sentenced to life imprisonment. We affirm.

At trial, the prosecution's theory of the case was that the stabbing of the victim, Oliver Oden, grew out of a prior confrontation between the victim and defendant. Defendant asserted an alibi defense and attempted to show that the witnesses were mistaken in their identification. He also offered evidence of his good character.

Defendant now raises numerous issues on appeal, which we address seriatim.

I

First, defendant argues that he was denied a fair trial because acoustics in the courtroom were poor due to extraneous noise from machinery which made it unreasonably difficult for the jurors to hear. Pursuant to MCL 768.29; MSA 28.1052, a trial judge has a duty to control all proceedings during the trial. Defendant correctly asserts that the conditions of a courtroom may affect a defendant's right to a fair trial. See *Estes v Texas,* 381

US 532; 85 S Ct 1628; 14 L Ed 2d 543 (1965), reh den 382 US 875 (1965).

Unlike the record revealing intolerable acoustic conditions in *People v Vaughn,* 128 Mich App 270; 340 NW2d 310 (1983), lv den 418 Mich 917 (1984), the record before us does not reveal that the noise from the machinery interrupted the proceedings so much that it deprived defendant of a fair trial, for there is no indication that the jury did not hear all of the evidence. Further, defense counsel neither complained nor moved for a mistrial. At most, the record supports a conclusion that, at times, it was difficult to hear in the courtroom. We find the words of Judge BEASLEY, dissenting in *Vaughn, supra,* p 278, to be apposite to the instant case:

> Greater comfort and less interruption is a desired goal, but lack of it does not mean defendant was prejudiced. No specific claim is made regarding evidence that was not heard and that would have made the jury reach a different result.

Accordingly, we find no error mandating reversal occurred due to the acoustical conditions of the courtroom.

## II

Defendant next claims that the prosecutor's questioning of three witnesses constituted error because he raised the possibility that defendant was a heroin user. He also argues that the prosecutor personally disparaged his credibility as a witness.

The test of prosecutorial misconduct is whether defendant was denied a fair and impartial trial. *People v Bairefoot,* 117 Mich App 225, 228; 323 NW2d 302 (1982). We note at the outset that defense counsel never objected at trial to the

alleged improprieties that led to the admission of certain evidence, which precludes appellate review absent manifest injustice. *People v Watts,* 145 Mich App 760, 761; 378 NW2d 787 (1985), lv den 424 Mich 889 (1986).

Although no manifest injustice is presented, a substantive review of each of the three claims relative to the admission of the evidence indicates that they are without merit.

The first line of questioning defendant cites concerns the prosecutor's redirect examination of his own witness, Navarre Tolbert. Just prior thereto, during cross-examination of Tolbert, defense counsel had apparently attempted to discredit the witness' identification of defendant.[1] The prosecutor's redirect examination of Tolbert elicited responses to questions in the same area.[2]

---

[1] The following colloquy occurred:

> *Q.* [*By Defense Counsel*] You had known him for three years?
> *A.* [*By Talbot*] Not actually knew him, but I had been in his presence before.
> *Q.* How did you first come into his presence?
> *A.* He asked me to go get something for him, and some money came up missing, and he didn't never want to get with me about it, because I went off to treatment center, then jail, and I ain't never seen him no more, and when I did see him every time I tried to get with him, he'd come with a violent attitude: Did I remember him? And he start swinging on me one day, so we got into it. He never asked me about whether I had his money or whatever, he just start swinging on me. We got into it, and that's when the bottle—Oden got into it when he picked up a bottle and tried to hit me with it, and he struck us.
> *Q.* You and Mr. Duff, you say, had difficulty because he accused you of taking some money, is that correct?
> *A.* Yeah.

[2] The portions of testimony defendant cites as error are emphasized:

> *Q.* [*By the Prosecutor*] If I understand your testimony on cross-examination, there was once a time when, in Mr. Oden's car, the defendant in this case gave you some money to go buy something, is that a fair statement?
> *A.* Yes.

During recross, defense counsel attempted to elicit an admission from Tolbert that defendant had not given him the money to buy drugs. Tolbert then equivocated,[3] although defendant now

---

*Q.* Now, first of all, was that the first time you ever saw the defendant, or had you seen him before?

*A.* I had copped for him before.

*Q.* You had copped for him before. Is that what you're saying?

*A.* Something like that.

*Q.* The jury maybe doesn't understand the language as we're using it, so I want to talk about language a little bit; first of all, let's talk a little more about Ecorse.

*      *      *

*Q.* All right. And when you talk about "copping"—"cop" is another word for bought, right? When you talk about copping for the man, you bought something for the man, or you're supposed to buy something for the man, is that right?

*A.* Right.

*Q. Like dope—whatever?*

*A.* Whatever.

*Q.* So the man, namely the defendant in this case, he gave you money, you're supposed to go buy whatever, is that right?

*A.* Yeah.

*Q.* And if I understand your testimony, you messed up the money, and didn't come back with the "whatever," is that right?

*A.* Yeah.

[3] The following colloquy occurred:

*Q. [By Defense Counsel]* You're saying the incident about the money started three years beforehand, correct?

*A. [By Tolbert]* Right. Correct.

*Q.* And Mr. Oden was there at the moment in time that you took the money from him, correct?

*A.* Correct.

*Q.* Now, it was not to buy drugs?

*A.* It was not what?

*Q.* You said it was to buy something, you indicated to Mr. Healy it was not to buy drugs. Is that correct?

*A.* It was to buy something.

*      *      *

*Q.* But you just ripped him off his money, correct?

*A.* Ripped him off?

*Q.* Took his money. You took the money. You didn't go buy

asserts that he denied that his disagreement with defendant concerned drugs.

We find the facts of the instant case distinguishable from those found in a case on which defendant relies, *People v McKinney,* 410 Mich 413; 301 NW2d 824 (1981). In that case, the defendant was charged with delivery of heroin; the defendant denied using or selling it. On cross-examination, the prosecutor was able to demonstrate the defendant's familiarity with heroin. In reversing the defendant's conviction, the Supreme Court found that the risk of prejudice from such evidence overwhelmed its probative value and that there was too great a risk that the jury would rely on the defendant's familiarity with the incidents of heroin use to convict him of an offense dealing with heroin. 410 Mich 420-421.

In this case, the comment upon which defendant bases his claim was made when the prosecutor was eliciting a definition of "copping" after Tolbert, when asked whether he had seen defendant before, stated: "I had copped for him before." At that point, it had already been brought out that Tolbert was serving a sentence for delivery of heroin. Moreover, Tolbert never explicitly denied "copping" drugs for defendant, contrary to defendant's assertion. While it would have been preferable for the prosecutor to refrain from mentioning "dope," we do not believe that defendant was denied a fair trial by that reference.

The next allegedly improper comment defendant cites concerns the prosecutor's cross-examination

whatever it was and you didn't give the money back back [sic] either, did you?

*A.* He didn't come to me like he wanted his money back.

*Q.* But you left the car with the specific purpose, that being to go buy something for him, correct?

*A.* (No reply).

of defense witness Michael Jackson,[4] who had testified on direct examination that he had been at a party in Ohio with defendant on the night of the stabbing, but had not seen defendant leave the party.

On cross-examination, the prosecutor questioned whether Jackson had "smoked any weed" that night and had Jackson show the jury his marijuana belt buckle. While these unobjected-to questions and answers may have been irregular, they did not imply that defendant used drugs, but rather cast doubt on Jackson's ability to perceive and recall and did not rise to the level whereby defendant was deprived of a fair trial.

Finally, defendant cites the prosecutor's cross-examination as an attempt to imply that Tolbert sold drugs and that defendant may have engaged his services.[5]

---

[4] The disputed parts of the cross-examination are emphasized in the portions of the following colloquy:

> *Q. Did you smoke any weed that night?*
> A. No.
> Q. You're sure about that?
> A. Positive.
> Q. Why don't you stand up there and show us that goodlooking [sic] belt buckle of yours to the jury.
> A. (Witness complies)
> *Q. What is that a picture of on that belt buckle?*
> *A. Marijuana.*
> Q. Okay, thank you.

[5] The following colloquy occurred:

> Q. You know what's going on out there on that street, don't you?
> A. Yes, sir.
> Q. Selling dope?
> A. Do I sell dope?
> Q. No, huh-uh, but doesn't that go on out there on that street?
> A. I imagine it is.

The prosecutor's line of questioning on cross-examination was based upon prior testimony that defense counsel elicited during direct examination as to the nature of Visger Street and the number of people who frequented it, and does not rise to the level of injection of innuendo. See *People v Moreno,* 112 Mich App 631; 317 NW2d 201 (1981).

Defendant's last contention was that the prosecutor disparaged his credibility by stating: "Oh, come on."[6]

*Q.* All right. That's what Tolbert is doing out on that street, isn't it?

*A.* I doubt if he has enough money to sell anything, myself.

*Q.* Now, if I understand you, you've known Tolbert maybe five years?

*A.* That's right.

*Q.* Where did you meet him?

*A.* On Visger.

\* \* \*

*Q.* You wouldn't be upon Visger Street, except to get to go to the store?

*A.* That's right.

*Q.* Otherwise, you're just driving by?

*A.* That's right.

\* \* \*

*Q.* How come you gave Tolbert $20 to go buy two beers?

*A.* Because he was a friend of mine.

*Q.* Oh, okay, he's a friend of yours.

*A.* An associate. I bought him a beer, I was going to buy him a beer.

\* \* \*

*Q.* How come you don't go buy the couple of beers? You're not under age.

*A.* No, I'm not under age.

\* \* \*

*Q.* You're sure it was beer?

*A.* Yes, I'm sure it was beer.

*Q.* All right. So, you give this associate of yours twenty bucks to go buy two beers for you and he splits with your twenty bucks.

*A.* That's right.

[6] The following exchange occurred:

*Q.* [*By the Prosecutor*] Who do you suppose was in that car?

While the prosecutor may not use the prestige of his office to make comments on a witness' credibility, this apparently offhand comment did not rise to the level that would cause the jury to suspend its own power of judgment. *People v Turner,* 41 Mich App 744, 747; 201 NW2d 115 (1972). See also *People v Christensen,* 64 Mich App 23, 32-34; 235 NW2d 50 (1975), lv den 397 Mich 839 (1976).

As to any possible cumulative error, the test to determine whether reversal is required is not whether there are some irregularities, but whether defendant has had a fair trial. *People v Kvam,* 160 Mich App 189; 408 NW2d 71 (1987). In this case, defendant has not been deprived of a fair trial, and reversal is not warranted on that basis.

---

*A.* [*By Defenant*] In my car?

*Q.* Right.

*A.* When the police towed my car, my mother wad [sic] driving it.

*Q.* Your mother was driving it?

*A.* That's right.

*Q.* *Oh, come on.*

*A.* Where we going?

*Q.* Let's go through this again. Where were you at four o'clock on that Monday?

*A.* At home.

*Q.* And were [sic] was your car?

*A.* My mother had it. I had hers.

* * *

*Q.* I don't suppose your mother comes down to the house, sort of out of breath, and says, the police chased me, I bailed out of the car and ran home—did she say that to you?

*A.* My mother was at the Muslim restaurant on Visger and a bunch of kids was out there and they told her somebody had towed her car away, but they knew it was my car, they towed my car away.

*Q.* So, if somebody is chased in your car seven blocks, and bails out of that car, takes off on foot, it aint' you?

*A.* No, it's not.

*Q.* And it ain't your mother?

*A.* No, it's not.

III

Defendant next asserts that the trial judge erred by prohibiting defense counsel from exploring on cross-examination of a police officer the fact that the officer had a personal relationship with the victim's sister.

At trial, Officer Sam Milton of the Ecorse Police Department testified as to his pursuit of defendant's vehicle that occurred approximately ten days after the incident when Tolbert pointed the vehicle out to him. Defense counsel, on cross-examination of Milton, elicited from him that he knew the victim and the victim's family. Defense counsel then endeavored to expand upon the relationship, at which point the prosecutor objected on relevancy grounds. Defense counsel explained that the relevancy would be that Milton was "going above and beyond the call of duty as far as this particular case is concerned."

Admissibility of evidence rests within the discretion of the trial judge, and the exercise of that discretion will not be overturned on appeal unless there has been a clear abuse of that discretion. *People v Lyles,* 148 Mich App 583, 599; 385 NW2d 676 (1986). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. Relevant evidence is generally admissible; irrelevant evidence is not. MRE 402. Even if relevant, a trial judge may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, wasted time or useless presentation of cumulative evidence. MRE 403.

Defendant correctly argues on appeal that bias of a witness is considered to be relevant. *Glory v People,* 22 Mich 220 (1871). However, defense counsel never argued that he was attempting to show bias of the witness, and the judge never had the opportunity to rule on that basis. Instead, defense counsel argued that he was attempting to show that Milton went "above and beyond the call of duty," suggesting that he did more than his job required relative to the chase of the car. The judge had to determine whether evidence of Milton's social relationship with the victim's family made it more or less probable that he chased defendant's car. We are loathe to second-guess the trial judge's judgment when, as here, we find no abuse of discretion. See *People v Howard,* 391 Mich 597, 603; 218 NW2d 20 (1974).

Accordingly, we find no error mandating reversal in this issue.

IV

Defendant next contends that the trial judge erred by failing to sua sponte give an instruction both on alibi and on the proper use of character evidence.

There is no question that a defendant has a right to a properly instructed jury, *People v Visel,* 275 Mich 77, 81; 265 NW 781 (1936).

Relative to defendant's unrequested alibi instruction, we find the Supreme Court's holding in *People v Burden,* 395 Mich 462, 467; 236 NW2d 505 (1975), to be dispositive of this issue. In that case, three justices held:

> We are not . . . prepared to hold that failure to give an *unrequested* alibi instruction is reversible error so long as the court gives a proper instruc-

tion on the elements of the offense and on the requirement that the prosecution prove each element beyond a reasonable doubt. [Emphasis in original.]

A fourth justice concurred in the result; two other justices concurred in the result by relying on MCL 768.29; MSA 28.1052 and GCR 1963, 516.2, now MCR 2.516(C).

See also *People v Hines,* 88 Mich App 148, 155; 276 NW2d 550 (1979), lv den 406 Mich 934 (1979).

In the instant case, the trial judge properly instructed the jury on the elements of the offense as well as the prosecutor's burden of proof. We find no error mandating reversal in the judge's failure to sua sponte instruct on alibi.

Similarly, no error occurred when the trial judge failed to sua sponte instruct the jury on the use of character evidence. *People v Luce,* 210 Mich 621, 625; 178 NW 54 (1920).

V

The last issue defendant raises is that he was denied effective assistance of counsel by his attorney's decision not to challenge either the causation of the victim's death or the intent element of the offense. This issue was the subject of defendant's motion for remand for an evidentiary hearing pursuant to *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), which was granted. A hearing was then held on August 29, 1986, following which the trial judge denied defendant's motion for new trial.

In accordance with *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977), ineffective assistance of counsel claims are reviewed in order to determine whether defense

counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and whether defense counsel conscientiously protected the client's interests, undeflected by conflicting considerations. If counsel meets this standard, it must then be decided if he made a serious mistake but for which the client would have had a reasonably likely chance of acquittal.

A. *Causation.* At trial, Dr. Smahana Sarmast testified that the victim died of complications from the stab wound. After eliciting a description of the victim's internal organs from the doctor on cross-examination, defense counsel did not explore the matter further.

At the evidentiary hearing, expert witness Dr. Henry Kallet testified that the underlying cause of the victim's death—the initial link in a chain of events—was a stab wound to the abdomen. The victim had complications, including cirrhosis of the liver. Dr. Kallet opined that, although it was possible for a person to die from the type of stab wound inflicted, a normally healthy person would have recovered from it in approximately three weeks. However, he also testified that the wound could have resulted in death where immediate medical attention had not been rendered.

Defense counsel testified at the hearing that the fact that the victim showed substantial improvement before he died did not raise any question in his mind that causation would be an issue. He stated, relative to a possible intervening cause, that he had heard rumors that the victim's visitors may possibly have brought him drugs. However, he stated that no investigation was initiated because "the funds were unavailable" to him as defendant's retained attorney. If, in fact, such a drug use had been substantiated, defense counsel

stated that he would have argued intervening causation.

It is not necessary that the wound inflicted on the victim was necessarily fatal and the direct cause of death. *People v Geiger,* 10 Mich App 339, 346; 159 NW2d 383 (1968), lv den 381 Mich 753 (1968). It was not unreasonable for the jury to find on the facts of this case that the stabbing started a chain reaction resulting in death. See *People v McFee,* 35 Mich App 227, 230; 192 NW2d 355 (1971), lv den 388 Mich 763 (1972). We are not persuaded that defense counsel's failure to pursue the issue of causation at trial rose to the level of ineffective assistance of counsel.

B. *Specific Intent,* Defendant next asserts that he was denied effective assistance of counsel when his attorney failed to challenge the degree of offense committed by failing to elicit certain evidence from which a jury might possibly be able to infer that the assailant did not have the intent to kill. He specifically challenges the fact that defense counsel did not elicit testimony concerning a statement known to him in order to attempt to negate defendant's intent.

The statement in question appeared in a police report and was attributed to the prosecution witness Garnell Wellons, although it did not appear in Wellons' written statement. The statement was: "I should kill you." Defense counsel testified that he did not want to use this information; that the jury could still have inferred that the first blow was intended to be lethal and thereby found the requisite intent. Defense counsel viewed any negation of specific intent as conflicting with defendant's alibi defense.

It is well settled that inconsistent defenses may be advanced. *People v Young,* 120 Mich App 645, 651; 327 NW2d 329 (1982), lv den 417 Mich 897

(1983). Defendant is entitled to have his attorney prepare and assert all substantial defenses, although he is not free to sit back and not inform his attorney of possible defenses, then claim that counsel's failure to assert them as evidence is incompetence. *People v Lewis,* 64 Mich App 175, 184; 235 NW2d 100 (1975), lv den 395 Mich 810 (1975).

In this case, defendant and others gave alibi testimony. As stated in *Burden, supra,* p 467:

> [T]he "defense" of alibi offers the defendant two separate avenues of relief. First, if the alibi is established, a perfect defense has been shown. Perhaps more importantly, if any reasonable doubt exists as to the presence of the defendant at the scene of the crime at the time the offense was committed (if such presence is necessary to commit the crime), the defendant must also be acquitted. *People v Resh,* 107 Mich 251, 254-255; 65 NW 99 (1895).

Defense counsel thought that negation of specific intent would conflict with defendant's alibi defense. His failure to defend on that basis does not rise to the level of ineffective assistance of counsel.

In *People v Strong,* 143 Mich App 442, 449; 372 NW2d 335 (1985), the defendant alleged that his attorney was ineffective because he failed to offer a defense of intoxication along with the inconsistent defense of misidentification. The Court rejected the defendant's allegation, using language that is apposite to the instant case:

> This Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy. *People v Avery,* 114 Mich App 159, 168; 318 NW2d 685 (1982), *lv den* 417 Mich 861 (1983). A court cannot conclude that merely because a trial strategy backfires, effective assistance of

counsel is denied. *People v Currelley,* 99 Mich App 561, 568; 297 NW2d 924 (1980), *lv den* 411 Mich 904 (1981).

We find that defendant was not denied effective assistance of counsel.

Accordingly, defendant's conviction is affirmed.

Affirmed.

Shepherd, J. *(dissenting).* I dissent. At the *Ginther* hearing, *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), defense counsel indicated that the victim's substantial improvement and his subsequent death shortly thereafter did not raise a question of a possible intervening cause. However, he admitted hearing "rumors" that visitors may have brought the victim drugs. He stated that no investigation was initiated because "the funds were unavailable." In Michigan, an indigent accused has the right to subpoena material witnesses in his favor at government expense. MCL 775.15; MSA 28.1252. Although counsel was retained in this case, if it could be shown that defendant was out of money and further investigation was necessary, I believe the trial court could have subpoenaed witnesses at government expense under the statute on motion by defense counsel.

I would remand. I am not prepared to say on this record that counsel's failure to pursue an investigation, or apprise the court of a lack of funds for that purpose, amounted to ineffective assistance of counsel. However, I believe a remand is necessary to determine if evidence was available, or is now available, such that defense counsel's failure to investigate did amount to ineffective assistance of counsel. At this point, it is unclear whether counsel had sufficient reason to pursue an investigation. We do know that he did

not pursue the investigation because he claimed not to have sufficient funds.

A criminal defendant is entitled to have defense counsel investigate, prepare and assert all substantial defenses. A substantial defense is one which, if asserted, might have made a difference in the outcome of the trial. *People v Turner,* 115 Mich App 247; 320 NW2d 57 (1982). Neglecting to interview witnesses is not, by itself, enough to constitute ineffective assistance of counsel unless it can be shown that such failure resulted in counsel's ignorance of valuable evidence which would have substantially benefitted the accused. *People v Johnson (After Remand),* 125 Mich App 76; 336 NW2d 7 (1983). The question is whether defendant could have legitimately asserted an intervening cause defense.

I would require an evidentiary hearing at which it could be determined whether such evidence exists. Defendant, through his appointed appellate counsel, should have the right to subpoena material witnesses, including expert witnesses, at government expense. MCL 775.15; MSA 28.1252. At the hearing defendant will have the opportunity to present evidence to support his claim that the victim's death was induced by drugs provided by the victim's friends while the victim was recovering from his stab wounds in the hospital. Such evidence would support a contention that counsel's failure to pursue an intervening cause defense or, at the least, to investigate the rumors, constituted ineffective assistance of counsel. *Johnson, supra;* see also *Friedman v United States,* 588 F2d 1010 (CA 5, 1979); *Proffitt v United States,* 582 F2d 854 (CA 4, 1978).

If such evidence is not available, the conviction should stand.

I would retain jurisdiction.