PEOPLE v SLOVINSKI

Docket No. 99887. Submitted October 7, 1987, at Grand Rapids.
Decided February 1, 1988.

David K. Slovinski, following a preliminary examination in district court, was bound over for trial in the Kent Circuit Court on charges of first-degree criminal sexual conduct and unarmed robbery. Defendant filed a timely written motion and offer of proof as required by the "rape shield" law, proposing to offer evidence that the complainant was a prostitute who had consented to perform the sexual acts which formed the basis for his prosecution. The trial court, Robert A. Benson, J., after conducting an in camera hearing at which two witnesses stated that complainant was a prostitute, ruled that defendant may offer the testimony of the two witnesses at trial for the purpose of attacking the credibility of the complainant, who, at the preliminary examination, had denied being a prostitute. The people, arguing that the admission of such evidence would be violative of the rape shield law, sought and were granted leave to appeal.

The Court of Appeals *held:*

1. The extent to which a witness may be cross-examined on questions affecting his credibility rests in the sound discretion of the trial court. However, character evidence offered to impeach or support a witness' credibility, other than evidence of a prior conviction for a crime, must be limited to the particular character trait of truthfulness or untruthfulness. In this case, to the extent that the challenged evidence will be offered for

REFERENCES

Am Jur 2d, Constitutional Law §§ 804 *et seq.*

Am Jur 2d, Criminal Law §§ 135 *et seq.*

Am Jur 2d, Rape §§ 31-40, 38, 86.

Admissibility in rape case, under Rule 412 of Federal Rules of Evidence, of evidence of victim's past sexual behavior. 65 ALR Fed 519.

Constitutionality of "rape shield" statute restricting use of evidence of victim's sexual experiences. 1 ALR4th 283.

Modern status of admissibility, in forcible rape prosecution, of complainant's prior sexual acts. 94 ALR3d 257.

the purpose of impeachment, the trial court erred in ruling that the evidence is admissible since no logical nexus exists between the complainant's reputation as a prostitute and her character trait of truthfulness.

2. In criminal sexual conduct cases, evidence of alleged prostitution is probative on the issue of consent if the fact that a complainant has engaged in intercourse for money has any tendency to make it more probable that the complainant consented to the sex act in issue. In this case, the proffered evidence of alleged specific acts of prostitution is probative on the issue of consent and has a tendency to make it more probable that the complainant entered into a financial arrangement with defendant for sexual acts. Any prejudicial effect such evidence may have would be outweighed by its probative value.

3. Admission of the challenged evidence would not violate MRE 404(a)(3) since defendant does not offer it as proof of complainant's character or that she acted in conformity therewith on a particular occasion. Instead, defendant seeks to introduce the evidence to establish a defense of consent.

4. The right of an accused to due process is, in essence, the right to a fair opportunity to defend against the state's accusations. The rights to confront and cross-examine witnesses and call witnesses in one's behalf are critical aspects of due process. In this case, exclusion of the challenged evidence would preclude defendant from presenting a defense of consent and thus would violate defendant's rights of due process and confrontation.

5. A sufficient offer of proof was made by defendant regarding the complainant's status as an alleged prostitute to allow the admission of evidence of prostitution.

Affirmed.

DANHOF, C.J., dissented. Judge DANHOF would hold that evidence of the complainant's prior sexual unchastity, in the form of reputation evidence or a specific instance of conduct, has little or no relevancy to the issue of the complainant's consent with defendant.

1. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE — PROSTITUTION — IMPEACHMENT.

Evidence of prostitution by a complainant in a criminal sexual conduct case is not admissible for purposes of attacking the credibility of the complainant; no logical nexus exists between a complainant's reputation as a prostitute and her character trait of truthfulness (MCL 750.520j; MSA 28.788[10], MRE 608[b]).

2. Rape — Criminal Sexual Conduct — Defenses — Consent —
    Evidence — Prostitution.

    Evidence showing that a complainant in a criminal sexual con-
    duct case was engaged in prostitution at the time of the alleged
    offense is admissible for the purpose of establishing a defense of
    consent where such evidence is probative on the issue of
    consent and has a tendency to make it more probable that the
    complainant had engaged in sexual intercourse for money.

3. Constitutional Law — Due Process.

    The right of an accused to due process is, in essence, the right to
    a fair opportunity to defend against the state's accusations; the
    rights to confront and cross-examine witnesses and call wit-
    nesses in one's behalf are critical aspects of due process.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

Kent County Office of the Defender (by *James F. Piazza*), for defendant on appeal.

Before: Danhof, C.J., and Cynar and J. E. Mies,* JJ.

Cynar, J. The people appeal by leave granted from an order granting defendant's motion allowing introduction of evidence alleging complainant to be a prostitute.

Defendant was charged with criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2), and unarmed robbery, MCL 750.530; MSA 28.798. No issue is raised on appeal concerning the robbery charge. At the preliminary examination, the complainant, testified that on March 17, 1986, she was standing on the corner of Division and Rose Streets in the City of Grand Rapids waiting for her girlfriend to pick her up. A white

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

van, driven by defendant, pulled up and offered her a ride to the Lime Lite Bar.

However, rather than taking the complainant to the bar, defendant drove to a wooded area, parked, and threw her into the back of his van. She hit her head and passed out. When she awoke, defendant had partially removed her jeans and panties, and was engaged in sexual intercourse with the complainant.

After completing the sexual act, defendant allegedly began hitting the complainant about her face and right arm, while calling her a "bitch" and a "slut." This activity lasted approximately twenty minutes. Defendant then pushed her back into the front seat where he held her by her hair while he kicked her in the face. Defendant drove away from the area, stopped and threw the complainant out of the van. He followed her to the ground and continued to hit her until a truck pulled up. At that point, defendant fled. The truck driver summoned an ambulance and the complainant was hospitalized overnight.

On cross-examination, the complainant acknowledged that, at the time of the incident, she told police that she was forced into the van by defendant, while at the preliminary examination she testified that she willingly went with defendant. No explanation was offered regarding this discrepancy. The complainant denied that she was a prostitute. At the close of proofs, defendant was bound over.

After defendant was bound over, he filed a motion on October 6, 1986, seeking an in camera hearing to determine whether defendant could introduce evidence of the complainant's past sexual conduct. The in camera hearing was held on March 23, 1987, for the purpose of determining whether defendant could introduce evidence that

the incident at issue started from a consensual act of prostitution and that the complainant was a prostitute.

At the hearing, defendant testified that on March 17, 1986, he picked up the complainant on Division Street near Rose Street in Grand Rapids. At that time, he spoke with her about "sexual matters" in exchange for money. After their conversation, the complainant agreed to perform oral sex on defendant for money. The complainant went into defendant's vehicle and they drove to a "safe spot." She performed oral sex and defendant paid her. Afterwards, defendant offered more money for sexual intercourse and the complainant agreed.

On cross-examination, defendant stated that he offered the complainant twenty dollars for oral sex and five dollars additional for intercourse. During the oral sex act, defendant allegedly told her to stop and offered her five dollars more to "just let me penetrate you, because you ain't doing nothing for me." She agreed. After the sex acts were over, defendant refused to pay her "because she wasn't no good."

Thereafter, defendant called five witnesses who had positively identified photographs of the complaining witness as a prostitute working the Division and Rose Streets area. Under oath, three of the witnesses declined to positively say that the person in the photographs was known to them as a prostitute. One of the three witnesses had no knowledge of the reputation of the person as being a prostitute. It was revealed that these three witnesses had been interviewed at the Kent County Jail by the public defender's investigator, and at the time the witnesses identified the photographs they had been, or were being, represented by the same defender's office.

Although the foregoing three witnesses equivo-
cated on whether the complainant was a prosti-
tute, two waitresses from the Acapulco Restaurant
(located on Division Street) positively stated that
the complainant was a prostitute. One waitress
testified to seeing the complainant in the restau-
rant once or twice a week during the summer of
1986 between 9 P.M. and 12 midnight. This wait-
ress had not heard anything about the complain-
ant's reputation as a prostitute. However, she saw
her walking and standing on the streets quite a
few times and she saw complainant associating in
the restaurant with known prostitutes.

The other waitress stated that she served as a
go-between for a restaurant customer and the
complainant in that she questioned the complain-
ant as to whether she was a prostitute. The com-
plainant stated that she was. Her price was $50
for oral sex and $75 for other acts. The waitress
also testified that during March, 1986, she saw the
complainant every night in the restaurant. On
cross-examination, the waitress stated that she has
acted as a go-between for restaurant customers
and prostitutes "at least a hundred times."

After extensive oral argument, the trial judge
ruled that he would not permit testimony from the
three witnesses who hesitated about their identifi-
cation. However, the judge stated that he would
allow the two waitresses to testify for the purpose
of impeaching the complainant's credibility. The
court's bench ruling was incorporated into an
April 24, 1987, order from which the people appeal
by leave granted.

On appeal, the prosecution puts forth two argu-
ments against the introduction of evidence that
the complaining witness is allegedly a prostitute.
First, such evidence is prohibited by the "rape

shield" statute, MCL 750.520j; MSA 28.788(10). Second, if this Court permits the introduction of that evidence, defendant should be required to make a stronger objective showing that the complainant is a prostitute than has been shown.

Defendant, on the other hand, argues that the introduction of the aforesaid evidence is essential and critical in presenting a defense. He claims that this act of sexual intercourse was consensual arising from a verbally-assented-to agreement of sex for money. In addition, because the complainant denied being a prostitute, her credibility was placed in issue. Defendant should be allowed to impeach the complainant through extrinsic evidence. Finally, defendant maintains that the exclusion of this evidence would constitute a violation of his Sixth Amendment right of confrontation as guaranteed by the United States Constitution.

Our analysis begins with reference to the rape shield statute, MCL 750.520j; MSA 28.788(10), which, in part, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
> (a) Evidence of the victim's past sexual conduct with the actor.
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

In *People v Arenda,* 416 Mich 1; 330 NW2d 814

(1982), our Supreme Court upheld the validity of the statute on its face and as applied under the facts of that case. The law was described as a legislative determination that, in most cases, such evidence is legally irrelevant. *Id.,* p 10. In addition, the Court stated that the prohibitions in the law are a reflection of a legislative determination that inquiries into a victim's past sexual history, even when minimally relevant, carries a danger of unfairly prejudicing and misleading the jury. In order to avoid these dangers, and to further the purposes of the statute (a complainant's sexual privacy, and encouraging the victim to report sexual assaults), the Court declared that excluding evidence of a victim's past sexual activities would remove unnecessary deterrents to the reporting and prosecution of crimes. *Id.,* p 10.

In *Arenda,* defendant sought to admit evidence of the eight-year-old male victim's possible sexual conduct with others to explain the victim's ability to describe the sexual acts that allegedly occurred and to dispel any inference that this ability came about from experiences with the defendant. In balancing the potentially prejudicial nature of this evidence, in light of the legislative purposes behind the statute, against the minimal probative value of the evidence, the Supreme Court concluded that application of the rape shield law did not infringe on defendant's confrontation right. The Court noted that other means were available by which defendant could cross-examine the victim as to his ability to describe the alleged conduct. More importantly, however, the Court left for future case-by-case determination the question whether under different facts the statute's prohibition would be unconstitutional as applied. *Id.,* p 13. The proper method by which these determinations

would be made by the lower courts was not addressed.

Justice KAVANAGH, with Justice LEVIN concurring, dissented on the ground that the categorical legislative determination that such evidence was inadmissible conflicted with a defendant's right to present evidence and a defense. They argued that the legislative policies behind the statute should be balanced against a defendant's Sixth Amendment right to present evidence by looking at whether the evidence is relevant and not unduly prejudicial as discussed in *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974).

In a case decided the same day as *Arenda, People v Williams,* 416. Mich 25; 330 NW2d 823 (1982), the Court was called upon once again to address the constitutionality of the rape shield law as applied to that case. In *Williams,* all four defendants were prosecuted on charges of first-degree criminal sexual conduct. All four asserted at trial that the complainant had consented to the acts with them as a group. In support of their defense, they sought to introduce evidence that the victim had had intercourse with one of the four and that in the past she had engaged in prostitution. *Id.,* p 31.

On the issue of consent, defendants asserted that introduction of evidence of prior sexual relations between defendant Williams and the complainant was probative of their claim that the complainant consented to have group sex with all four. *Id.,* pp 36-37.

Justice WILLIAMS, writing for the plurality, and applying the general relevance rule, MRE 401, concluded that the purpose for which defendants sought to introduce such evidence was irrelevant because even though the complainant may have

consented to sexual intercourse with defendant Williams, this did not necessarily make it more probable that she would have consented to group sex. *Id.,* pp 37-38.

In addition, the Court rejected defendants' assertion that the complainant's prior sexual acts should have been admitted on the issue of the victim's credibility. Justice Williams stated that the notion of unchaste women being prone to lying was as antiquated and foolish as the belief that simply because a woman consented to intercourse with a third party she probably consented to intercourse with the defendant. *Id.,* p 39. Citing MRE 608, the Court stated that prior sexual relations between defendant Williams and the complainant were unrelated to the victim's particular character trait of truthfulness or untruthfulness. *Id.,* p 40.

As to introduction of evidence of prostitution, the Court once more rejected defendants' basis for such evidence, noting that there was very little evidence indicating that any sex for money was discussed. In light of these facts, the Court stated:

> It is evident that defendants did not seek to establish at trial that the complainant consented to sexual intercourse with all four defendants as an act of prostitution. Thus we need not decide whether upon a proper record supporting the defense of financially induced consent, a trial court could constitutionally exclude evidence of prior or past prostitution based on § 520j(2). [416 Mich 42-43.]

Finally, the Court stated that there is no logical relation between a complainant's reputation for prostitution and the character trait of truthfulness or untruthfulness. "The law should not recognize any necessary connection between a witness's veracity and her sexual immorality." *Id.,* p 45.

In concluding its opinion, the Court summarized its decision as follows:

> In our opinion it would have been error under the facts of this case for· the trial court to have admitted evidence that one of four defendants had past sexual relations with the complainant, and that the complainant was a prostitute. This is not to say, however, that evidence of a complainant's prior sexual behavior with a sole defendant or even one of several defendants, or her reputation as a prostitute can never be relevant to an issue presented at trial. Our decision today rests solely on the irrelevance in this particular case of the proffered evidence to the asserted defense of consent and to impeachment of the complainant's credibility. It is, therefore, unnecessary to address ourselves to constitutional questions which may arise in the future by the application of this state's "rape shield" law to different circumstances of enhanced probative value. Accordingly, we reverse the judgment of the Court of Appeals and reinstate defendants' convictions. [416 Mich 46.]

The issuance of *Arenda* and *Williams* did not settle the question of the rape shield law's constitutionality since in *Arenda* the Court found the law constitutional as applied, while in *Williams* the Court utilized general evidence rules to determine the admissibility of evidence of prior sexual history of the complainant.

Subsequently, in *People v Hackett* and its companion case of *People v Paquette,* 421 Mich 338, 344; 365 NW2d 120 (1984), the Supreme Court addressed once again the constitutionality of the rape shield statute as against the challenge that exclusion of evidence of the victims' prior sexual conduct with persons other than the defendant violated defendants' Sixth Amendment rights of confrontation and cross-examination. Before ad-

dressing the defendants' claims, the Court seized the opportunity to further explicate its decision in *Arenda.*

Ultimately the *Hackett* Court held that the exclusionary provisions of the statute did not deprive defendants of their right to confrontation. The more interesting aspect of the *Hackett* decision was the approach taken by the Court in reaching that result. The majority opinion effectively adopted MRE 404(a)(3)[1] as the governing rule to be applied in determining the admission of this evidence, although only Justice KAVANAGH's concurring opinion acknowledged that this was what the majority had done.

In *Hackett,* the majority stated that the statute and "its parallel provisions in the Michigan Rules of Evidence, MRE 404(a)(3)," constituted a policy determination that sexual conduct or reputation as evidence of character and for impeachment, while logically relevant, was not legally relevant. In addition, the Court noted that neither the confrontation clause, nor due process, confer on a defendant an unlimited right to admit all relevant evidence or cross-examine on any subject. *Id.,* p 347.

However, the Court recognized that there was a dimension of the confrontation clause that guaran-

---

[1] This rule provides:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

* * *

(3) Character of victim of sexual conduct crime. In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease[.]

teed to defendant a reasonable opportunity to test the truth of a witness' testimony. See *Alford v United States,* 282 US 687; 51 S Ct 218; 75 L Ed 624 (1931) (holding that a defendant must have some opportunity to show bias on the part of a prosecution witness).

More importantly, the *Hackett* majority acknowledged that, although the Legislature had determined that such evidence was not admissible as character evidence to prove consent or for general impeachment, it did not necessarily follow that such evidence was *never* admissible. *Id.,* p 348.

Thereafter, the Court indicated that in certain limited circumstances such evidence may not only be relevant, but necessary to preserve a defendant's confrontation right. The Court then set out some instances where such evidence would be admissible:

> For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. *Commonwealth v Joyce,* 382 Mass 222; 415 NE2d 181, 185-186 (1981); see also *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). Moreover in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. *State v Jalo,* 27 Or App 845; 557 P2d 1359 (1976); *State v Howard,* 121 NH 53; 426 A2d 457 (1981). Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past. *People v Werner,* 221 Mich 123, 127; 190 NW 652 (1922); *People v Mikula,* 84 Mich App 108, 115-116; 269 NW2d 195 (1978); *State ex rel Pope v Mohave Superior Court,* [113 Ariz 22, 29; 545 P2d 946 (1976)]. [421 Mich 348-349.]

The *Hackett* majority then established the procedure by which such evidence should be evaluated in determining its admissibility. The Court adopted the procedure provided for in MCL 750.520j(2); MSA 28.788(10)(2).[2] The defendant is required to offer proof as to the proposed evidence and demonstrate its relevance to the purpose for which its admission is sought. The offer of proof must be sufficient as to a defendant's confrontation right, as distinct from use of prior sexual history as character evidence or for impeachment. *Id.,* p 350.

If defendant's offer of proof withstands this level, the trial court continues to possess discretion to exclude the relevant evidence offered where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury. *Id.,* p 351. See also MRE 403. The trial court should favor exclusion of this type of evidence unless exclusion would "unduly infringe on the defendant's constitutional right of confrontation." *Id.,* p 351.

The facts in *Hackett* were as follows: Defendant made an offer of proof to admit evidence of the victim's reputation for homosexuality for the purposes of impeaching his credibility and showing consent. Defendant also sought introduction of specific instances of the complainant's prior homosexual conduct with prisoners of the same race as

[2]

(2) If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

defendant to negate the inference that it would be improbable that a white male prisoner would consent to sodomy by a black male prisoner. *Id.,* p 351.

The Court rejected defendant Hackett's proffered evidence of the victim's reputation for homosexual activity to impeach his credibility as a witness, because generally there was no logical nexus between a complainant's reputation for unchastity and the character trait for truthfulness or untruthfulness. *Id.,* p 352. The Court also rejected evidence of the victim's reputation or specific acts of homosexual conduct as necessary to establish the defense of consent. The Court noted that homosexuality, standing alone, had little or no logical relevance between the prior acts and the issue of consent. Although the Court declared such evidence irrelevant, it is interesting to note that this evidence of alleged homosexual conduct between the complainant and a black male prisoner occurring three days prior to the incident was nonetheless brought out at trial. Justice BOYLE indicated that defendant Hackett was not denied his right to confrontation "since he was given the opportunity, even though limited in fashion, to expose to the jury the complainant's past homosexual encounter with a prisoner of the same race as defendant as tending to show his consent in this instance." *Id.,* p 353. This conclusion raises an interesting question whether the *Hackett* majority would have permitted this prior instance, if it had not been introduced at the trial. The Court's analysis is not clear on this point.

The most recent Supreme Court case construing the rape shield law concerned the admissibility of evidence of prior sexual conduct between the complainant and defendant, *People v Perkins,* 424 Mich 302, 303; 379 NW2d 390 (1986). The Court, in

a per curiam opinion held that evidence relating to sexual activity between a complainant and a defendant does not involve the same strong prohibitions as evidence of a victim's past sexual activities with third persons. Instead, this evidence involves the customary evidentiary issues of the materiality of the evidence to the issues in the case and the balancing of its probativeness with the danger of unfair prejudice. *Id.,* pp 307-308.

With the foregoing background and discussion, we now turn to the task of deciding whether the application of the rape shield statute and its counterpart, MRE 404(a)(3), is constitutional as applied to our facts. At the outset, we note that the Supreme Court has not yet determined whether the statute must yield to the evidence rule. However, because *Hackett, supra,* seems to indicate that the rules of evidence should be applied, we proceed to analyze this case under the rules of evidence.

## IMPEACHMENT

In his first assertion for permitting evidence that the complainant is an alleged prostitute, defendant alleges that the complainant's past conduct is relevant on the issue of credibility because she denied being an alleged prostitute, thereby placing herself in a false light. Defendant claims that, through extrinsic evidence, he should be allowed to impeach the complainant.

In this case, the trial court complied with the procedure outlined in *Hackett, supra,* and MCL 750.520j(2); MSA 28.788(10)(2) by holding an in camera hearing to determine the admissibility of the evidence. The trial court allowed the evidence for the purpose of impeaching the complainant's credibility. We believe that this was an impermis-

sible purpose. However, although the court utilized an incorrect reason for allowing the evidence, the court nonetheless reached the right result.

MRE 608(b) provides:

> (b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The extent to which a witness may be cross-examined on questions affecting his or her credibility rests in the sound discretion of the trial court. *People v Bouchee,* 400 Mich 253, 266-267; 253 NW2d 626 (1977). In *Bouchee,* our Supreme Court held that character evidence offered to impeach or support a witness' credibility, other than evidence of a prior conviction for a crime, must be limited to the particular character trait of truthfulness or untruthfulness. *Id.*

In *Williams, supra,* p 45, the Supreme Court observed that a defendant's endeavor to impeach a complainant's credibility through her alleged reputation as a prostitute is limited to the particular character trait of truthfulness or untruthfulness. The Court found no logical nexus between a complainant's reputation for prostitution and the character trait of truthfulness or untruthfulness. See also *Hackett, supra,* p 352.

In our case, to the extent that defendant sought

to impeach the complainant's credibility as a witness by offering evidence that she was an alleged prostitute, it was an impermissible purpose and such evidence may not be introduced for that purpose.

Defendant also claims that, while extrinsic evidence is normally inadmissible to prove collateral issues, a recognized exception does exist when a witness puts herself in a "false light." In support of his claim, defendant relies on federal cases. It should be noted that MRE 608 and FRE 608 are substantially identical.

Defendant first cites *United States v Herman,* 589 F2d 1191 (CA 3, 1978), in support of this proposition. In *Herman,* the trial court allowed the government to introduce evidence of specific acts of the defendant to rebut defendant's character testimony. However, in allowing the evidence, the trial court did not indicate upon which rule of evidence it was relying. *Id.,* p 1196.

The third circuit reversed the lower court's ruling, finding that FRE 608(b) does not allow this type of evidence. In addition, the court refused to create a judge-made exception to FRE 608(b) for "false light" testimony. Instead, the court found the testimony more prejudicial than probative, not harmless error, and reversed and remanded for a new trial. *Id.,* pp 1196-1198.

Defendant also refers to *Carter v Hewitt,* 617 F2d 961 (CA 3, 1980), in support of his proposition. In *Carter,* the plaintiff filed a 42 USC 1983 claim alleging that he was severely beaten by prison guards in the course of a routine "shakedown," or search, of his cell. Plaintiff testified in his own behalf. During cross-examination, plaintiff was shown a letter written to a fellow inmate. Plaintiff admitted writing the letter. The letter allegedly indicated a procedure by which false claims of

prison brutality should be brought. The trial court admitted the letter as bearing on both the plaintiff's credibility and his modus operandi of filing false claims. *Id.,* pp 964-965.

On appeal, plaintiff alleged that admission of the letter violated FRE 608(b). In upholding the lower court's ruling, the third circuit stated that the vast majority of decisions finding violations of rule 608(b) did so when the extrinsic evidence that was challenged was obtained from a witness *other* than the one whose credibility was under attack. When, however, the evidence is obtained from the witness whose credibility is under attack, as was the case there, there is no problem of admission under the rule. *Id.,* pp 969-970.

Defendant finally alludes to a 1948 California case, *People v Westek,* 31 Cal 2d 469; 190 P2d 9 (1948). *Westek* stands for the proposition that, when a defendant in his case in chief opens the door by stating that he had never done any act similar to what he was accused of with the intent to cause sexual arousal, the prosecutor may introduce evidence of similar acts to prove intent. 31 Cal 2d 481. In other words, the *Westek* holding is consistent with MRE 404(b). *Westek* has no application to our case.

Similarly, the other cases cited by defendant do not support his proposition. The federal courts have refused to recognize a "false light" exception to FRE 608(b). The only time that evidence of specific instances of conduct may extrinsically be introduced is when it is obtained from the witness whose credibility is being attacked. We agree with the federal courts on this issue. Thus, defendant's purpose for this evidence, to impeach the complainant's veracity by extrinsic proof that she is an alleged prostitute, is improper and impermissible under MRE 608(b).

While defendant is precluded from introducing evidence of alleged prostitution under a theory of impeachment, we conclude that this evidence is admissible on the issues of consent and right of confrontation.

## CONSENT

As to this basis for admission of the evidence, this very question was left undecided in *Williams, supra,* pp 42-43, because the record in that case did not warrant an analysis of the issue. Defendant argues that this evidence is relevant to his theory of the case, namely, that the complainant consented to an act of prostitution.

Evidence is relevant if it has any tendency to make the existence of a fact in issue more or less probable than it would be without the evidence. MRE 401. Relevant evidence may nonetheless be excluded from trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

In this case then, the question is whether evidence of the existence of consent, a fact in issue, would have any tendency to make that fact more or less probable. We believe that it would.

Before evidence can be properly admitted, the matter sought to be established by that evidence must be in issue and the proffered evidence must have probative value with respect to that matter. *People v McKinney,* 410 Mich 413, 418; 301 NW2d 824 (1981). Materiality of evidence was addressed and defined in *People v Oliphant,* 399 Mich 472, 488-489; 250 NW2d 443 (1976):

"In the courtroom the terms relevancy and materiality are often used interchangeably, but materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue or probative of a matter in issue, the evidence is properly said to be immaterial. As to what is 'in issue', that is, within the range of the litigated controversy, we look mainly to the pleadings, read in the light of the rules of pleading and controlled by the substantive law." McCormick on Evidence (2d ed), § 185.

Under this definition, evidence probative of a matter in issue is material. *Oliphant, supra,* p 489. Evidence of the complainant's alleged status as a prostitute is being offered to show that the instant act of intercourse was consensual. This evidence is material. That is, it would help prove or disprove a matter in issue, consent.

Probative value refers to "the tendency of evidence to establish a proposition which it is offered to prove." McCormick, Evidence (2d ed), § 185, p 435 as cited in *McKinney, supra,* p 418, n 3. Probativeness is a matter of simple, logical relevancy, evaluated by logic, common experience and common sense, not involving legal technicalities. *Id.*

Thus, evidence of alleged prostitution is probative on the issue of consent if the fact that a complainant has engaged in intercourse for money has any tendency to make it more probable that the complainant consented to the sex act in issue. We conclude that, on the record made below, the proffered evidence of alleged specific acts of prostitution is probative on the issue of consent. It has a tendency to make it more probable that the complainant entered into a financial arrangement with defendant for sexual acts.

Because the evidence is legally and logically relevant, the next issue then is whether it can pass muster under MRE 403. We conclude that its probative value outweighs the danger of unfair prejudice. The crux of defendant's claim is that, because the complainant is an alleged prostitute, she consented to sex with him for money. Without such evidence, defendant would be unable to establish a defense. We recognize the prejudicial impact of such evidence. However, the jury would still be free to disregard the two waitresses' testimony that the complainant is a prostitute.

Although the evidence is more probative than prejudicial, it must nonetheless be admissible under MRE 404(a)(3). This rule prohibits character evidence to prove that a person acted in conformity therewith. In this case, at first blush, it appears that defendant's evidence is the type of character evidence prohibited by rule 404(a)(3). Introducing evidence of prostitution is tantamount to stating that because the complainant is an alleged prostitute, and because defendant offered her money for sex, she therefore engaged in sex for money in conformity with her character as a prostitute.

However, we do not find that the defendant seeks to introduce evidence of alleged prostitution to establish that the complainant acted in conformity therewith. Instead, the evidence is offered for the purpose of establishing the defense of financially induced consent.

As to defendant's other claims that this evidence is admissible under MRE 404(b) and MRE 405 (methods of proving character), we find no merit. MRE 404(b) applies only to criminal defendants and not all other witnesses. See *People v Thomas Smith,* 388 Mich 93, 95-97; 199 NW2d 179 (1972). The committee notes on MRE 404(b) indicate that the committee viewed this rule as consistent with

prior Michigan law, citing *People v Thomas Smith,*
*supra,* on this point.

MRE 405 does not permit admission of this
evidence because we determined that the com-
plainant's character was not in issue and defen-
dant was not offering the evidence to establish she
acted in conformity therewith. Thus, discussion of
proof of character evidence under MRE 405 is
unnecessary.

### CONFRONTATION

Defendant's final claim for admission of this
evidence is based on his Sixth Amendment right of
confrontation. Defendant alleges that without this
evidence he has no defense and, thus, his right of
due process would be violated. We agree. The right
of an accused to due process is, in essence, the
right to a fair opportunity to defend against the
state's accusations. The rights to confront and
cross-examine witnesses and call witnesses in one's
behalf are rights which long have been recognized
as critical aspects of due process. *Chambers v*
*Mississippi,* 410 US 284, 294; 93 S Ct 1038; 35 L Ed
2d 297 (1973).

In *In re Oliver,* 333 US 257, 273; 68 S Ct 499; 92
L Ed 682 (1948), Justice Black identified these
rights as necessities of a fair trial:

　　A person's right to reasonable notice of a charge
against him, and an opportunity to be heard in his
defense—a right to his day in court—are basic in
our system of jurisprudence; and these rights in-
clude, as a minimum, a right to examine the
witnesses against him, to offer testimony, and to
be represented by counsel.

In *Chambers, supra,* the United States Supreme

Court stated that the right of cross-examination is implicit in the confrontation clause, and helps assure the "accuracy of the truth-determining process." It is essential and fundamental to a fair trial. 410 US 295. However, as we noted earlier, neither the confrontation clause nor due process confers on a defendant an unlimited right to admit all relevant evidence or cross-examine on any subject. In appropriate cases, the right to confront and cross-examine may yield so as to accommodate other legitimate state interests. *Chambers, supra,* 410 US 295. But restriction or denial of this right requires that the competing state interest be closely examined. *Berger v California,* 393 US 314, 315; 89 S Ct 540; 21 L Ed 2d 508 (1969).

We recognize that the state has legitimate interests in prohibiting a defendant from inquiring into a victim's sexual past. The interests include the encouragement of victims to report sexual offenses and the recognition by courts and society in general that unchaste women are not especially prone to lying. *Arenda, supra,* p 10; *Williams, supra,* p 39. These interests need to be balanced against the defendant's right to present a defense and confront his accuser.

The Michigan cases dealing with this issue have not found undue infringement of a defendant's confrontation right by the exclusion of such evidence. Other jurisdictions, however, have addressed this issue. In *State ex rel Pope v Mohave Superior Court,* 113 Ariz 22; 545 P2d 946 (1976), the Supreme Court of Arizona noted that where the defendant alleges that the victim consented to an act of prostitution, the accused should be permitted to present evidence of her reputation as a prostitute and her prior acts of prostitution to support such a defense. 113 Ariz 29. However, the *Pope* court held that character evidence concern-

ing unchastity is inadmissible for impeachment purposes.

In *State v Quinn,* 121 Ariz 582; 592 P2d 778 (1978), the Arizona Court of Appeals held that a defendant may cross-examine a complainant on prior acts of prostitution where (1) the defendant alleges the victim actually consented to an act of prostitution, and (2) it is determined outside the jury's presence that the evidence is more probative than prejudicial. 121 Ariz 585.

In *People v Varona,* 143 Cal App 3d 566; 192 Cal Rptr 44 (1983), defendants claimed that the complainant solicited them for acts of prostitution, engaged in sex acts with them, and became enraged when she discovered that the defendants had no money. Defendants attempted to offer proof that the victim was then on probation for a plea-based conviction of prostitution. The evidence was excluded. The appellate court reversed, finding that on those facts evidence of prostitution should have been permitted since it would cast light on her story both in regard to why she was at the bus stop and whether she voluntarily engaged in the sex acts. The court specifically did not hold that prior evidence of prostitution to show consent would be admissible in every rape case. 143 Cal App 3d 570.

Finally, in *Shaffer v State,* 443 NE2d 838 (Ind, 1983), the defendant claimed that the complaining witness charged him with rape when he refused to pay her for an act of prostitution. He offered testimony of witnesses who claimed to have seen the victim in an area notorious for prostitutes, approaching cars and soliciting. *Id.,* p 840. The trial court excluded such evidence under that state's rape shield law. The Indiana Supreme Court rejected the "more probative than prejudicial" standard as the one to be used in determin-

ing admissibility. Instead, the court explicitly relied on the rape shield law to uphold the trial court's ruling. *Id.*

The foregoing cases indicate a willingness on the part of some jurisdictions to allow evidence that a victim is a prostitute when the defense is consent and a proper showing thereof has been made. In our case, we conclude that evidence of the victim's prior sexual activity is absolutely critical in ensuring defendant a fair trial and in preserving his confrontation right. Without this evidence, defendant would be precluded from presenting his defense of consent.

The people further argue that the defendant has not made a strong objective showing that the complainant may be a prostitute. We disagree. Both waitresses who testified regarding the complainant testified from their own personal knowledge and observation of the complainant. One waitress even admitted to "soliciting" on behalf of a restaurant patron by questioning the complainant as to whether she was a prostitute and was willing to engage in an act of sex for money. Moreover, these waitresses were not aware of the nature of the charges pending against defendant when they identified the victim as being an alleged prostitute. On these facts, we conclude that defendant made a sufficient offer of proof on the victim's status as an alleged prostitute.

We wish to point out that our holding today is solely limited to the facts presented. By our decision, we do not imply that in the future such evidence will always be admissible in these types of cases. As *Arenda, supra,* indicated, we leave for future case-by-case determination the question whether under different facts such evidence will be admitted.

Affirmed.

J. E. Mies, J., concurred.

Danhof, C.J. *(dissenting).* I do not agree with the majority's holding that evidence of alleged prostitution is relevant to the issue of consent. The "rape shield" statute, MCL 750.520j(1); MSA 28.788(10)(1), and MRE 404(a)(3) reflect the general rule that "evidence of a complainant's prior sexual unchastity, in the form of reputation evidence or a specific instance of conduct, has little or no relevancy to the issue of complainant's consent with defendant." *People v Hackett,* 421 Mich 338, 354; 365 NW2d 120 (1984). Accordingly, our Supreme Court held that evidence of a complainant's reputation as a homosexual was irrelevant to show consent. *Hackett, supra,* p 353.

Likewise, I do not think that complainant's reputation as a prostitute is relevant to show consent. The fact that financially induced consent is alleged does not make the evidence of alleged prostitution any more relevant than the reputation evidence in *Hackett* that was used to show consent to homosexual activity. I would not address the right to confrontation issue because defendant's right to confrontation only extends to relevant evidence. *Hackett, supra,* p 354.