*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JIVONNIE RAMONE JONES,

        Defendant-Appellant.

UNPUBLISHED
January 28, 2021

No. 349051
Muskegon Circuit Court
LC No. 17-002872-FC

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant appeals by right his conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables). Defendant claims that the exclusion of certain evidence under the "rape-shield" statute, MCL 750.520j, violated his right to a fair trial and his right to a reasonable opportunity to test the truth of the witness's testimony under the Confrontation Clause, US Const, Am VI. We affirm.

## I. BACKGROUND

## A. TRIAL

To provide context to defendant's argument regarding the application of the rape-shield statute in this case, we will first summarize the evidence presented at trial. Complainant testified that she had known defendant for about a half a year at the time of the offense. Defendant, who was homeless, arrived at complainant's home on the night of February 27, 2017, and asked her to cash a check for him. Defendant also asked to stay the night. Complainant and defendant gave conflicting accounts of the events that followed. Complainant testified that when she received a phone call from William Gilbert defendant threw her phone and became hostile. She testified that defendant dragged her by her hair into a bedroom where he forced her to perform oral sex on him and then proceeded to have intercourse with her. Complainant testified that she made it clear to defendant that she did not want to engage in sexual activity, and that she physically resisted him before he dragged her into the bedroom. She stated that defendant hit her in the head, causing injury.

Gilbert testified that he stopped by complainant's home the night of the incident to inquire about purchasing a van her driveway. Gilbert explained what happened next:

> When I approached the home, like I said, the lights were on. So I went to knock on the door and at that time I heard some scuffling in the inside of the home. It was muffled, like someone had been being stopped from talking, like they were being muffled with their mouth or choked on or something like that. And that's when she had hollered out: Help me, help me.

Gilbert testified that the cries for help became more "urgent or more serious." Gilbert called the police and met with Officer Scott Everson at a nearby bar. Everson concluded that something serious was happening and went to complainant's home. When he knocked on the door he heard "muffled and clear yells for help from what sounded to be a female's voice." Everson testified that he heard the voice say "help me, help me, over and over and over again." After attempting to get someone's attention, and trying to pry the door, Everson "forced entry" into the house, while yelling the entire time. When Everson entered the house, he could see into a bedroom about three feet to his right. Everson testified: "The Defendant was in what I'd call a flanking position directly over the victim. He was also completely naked." Everson told defendant to get up and get dressed. Complainant also came out to the living room and got dressed. Everson noticed that complainant had a large bump on her forehead and called an ambulance; complainant was taken to the emergency room for treatment.

Defendant testified at trial that he had consensual oral and vaginal sex with complainant. Defendant denied that he dragged complainant into the bedroom or forced her to do anything. Defendant also denied that he caused complainant's injuries and testified that she had them when he arrived at her house. Defendant admitted that complainant was yelling "help me," but said she did not do so until the sex ended and that she was falsely claiming rape.

## B. MOTION IN LIMINE

At the preliminary examination, defendant testified that complainant "is a well known prostitute." He further testified that while he was at her house on the night of the offense a man came who defendant incorrectly assumed was Gilbert. Defendant said that complainant and this man went into another room and that defendant heard complainant yelling "Help me, help me." Defendant noted that complainant "had a big bump on her head" when she came out of the room. Defendant testified that when the third party left he and complainant had consensual sex.

The prosecution moved in limine "to preclude Defendant from introducing any evidence that the victim might have been involved in any sexual conduct or activity with a third party other than Defendant." In addition to defendant's testimony at the preliminary examination, the prosecution asserted that defendant told the police that complainant had sex with the unidentified third party while defendant was present at the home. The prosecution also sought to exclude a Michigan State Police Crime Laboratory report indicating that a swab collected from complainant's person tested positive for the DNA of complainant, defendant, and an unrelated unknown individual.

In response, defendant argued that evidence of the conduct relating to the third party who "struck [complainant] on the forehead" and the DNA evidence did not fall within the purview of the rape-shield statute. Defendant conceded that his observation that the third party had sex with complainant and his testimony that complainant was a prostitute were covered by the statute but argued that this evidence was necessary to his defense and excluding it would violate the Confrontation Clause. See US Const, Am IV; Const 1963, art 1, § 20. Defendant maintained this evidence was not being offered for character evidence, to prove consent, or general impeachment purposes. Rather, defendant argued that the otherwise barred testimony was necessary to provide context to the third party's actions, i.e., it would explain why the man arrived in the middle of the night and went into another room with complainant.

At a pretrial hearing, the trial court granted the prosecution's motion in limine, stating:

> In this case the information that was being sought by the defense on bringing forth testimony and evidence of a third party's sexual acts will be excluded and will not be allowed in this court, and it will be because of Rape Shield laws that do apply to this case.

## II. ANALYSIS

### A. RAPE SHIELD STATUTE

Defendant argues that the trial court erred by excluding evidence under the rape-shield statute.[1] We conclude that the trial court properly excluded defendant's proffered testimony that complainant was a prostitute; that she had sex with another man on the night in question while defendant was present; and that complainant told defendant that she had been previously raped. As for the DNA analysis of a swab collected from complainant, even assuming that this was not covered by the rape-shield statute and would have otherwise been admitted, we conclude that preclusion of this evidence was harmless.

MCL 750.520j, known at the rape-shield statute, provides in part:

> (1) Evidence of specific instances of the complainant's sexual conduct, opinion evidence of the complainant's sexual conduct, and reputation evidence of the complainant's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

---

[1] "The decision whether to admit evidence is within the trial court's discretion, which will be reversed only where there is an abuse of discretion." *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A decision that falls outside the range of principled outcomes is an abuse of discretion. *People v Sharpe*, 502 Mich 313, 324; 918 NW2d 504 (2018). "To the extent that the trial court's evidentiary decision involves underlying questions of law, such as whether a statute precludes admissibility of evidence, this Court reviews those questions of law de novo." *Id*.

(a) Evidence of the complainant's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

The rape-shield statute generally prohibits the admission of three categories: (1) evidence of specific instances of the complainant's sexual conduct, (2) opinion evidence on the complainant's sexual conduct, and (3) reputation evidence of the complainant's sexual conduct. *People v Sharpe*, 502 Mich 313, 327; 918 NW2d 504 (2018). The statute then provides "two narrow exceptions" in MCL 750.520j(1)(a) and (b). *People v Adair*, 452 Mich 473, 478; 550 NW2d 505 (1996) (quotation marks and citation omitted). "When applying the rape-shield statute, trial courts must balance the rights of the victim and the defendant in each case." *People v Benton*, 294 Mich App 191, 198; 817 NW2d 599 (2011).

To begin, defendant's testimony that complainant is a well-known prostitute was reputation evidence of complainant's sexual conduct and therefore plainly within the scope of the rape-shield statute. Defendant relies on *People v Slovinski*, 166 Mich App 158, 177-183; 420 NW2d 145 (1988), in which we held under the facts of that case that evidence that someone is engaged in prostitution at the time of the offense was admissible as evidence of consent. In *Slovinski*, however, the defendant asserted that the complainant was working as a prostitute at the time of the offense and there were other witnesses who identified the complainant as a prostitute who worked the area where the defendant picked her up. *Id*. at 146-147. In contrast, defendant does not allege that complainant consented to sexual acts with him as a prostitute,[2] nor has he offered any supporting evidence that objectively shows that complainant was a prostitute. Accordingly, this case did not fit in the narrow exception recognized by *Slovinski* and testimony that complainant was a prostitute would have been improper reputation evidence.

Next, defendant's statement that complainant had sex with another man is an assertion of a specific instance of complainant's sexual conduct, bringing it within the scope of the rape-shield statute. It does not fit either exception listed in MCL 750.520j(1). Similarly, defendant's claim that complainant told him that she had been raped twice also described specific instances, albeit involuntary instances, of complainant's sexual conduct. Defendant did not assert that he was the perpetrator of either of these alleged rapes, nor was defendant seeking to admit this evidence as the source of semen, pregnancy, or disease. Therefore, it does not fit either exception under MCL 750.520j(1).

Defendant argues that evidence barred by the rape-shield statute was nonetheless admissible under *People v Hackett*, 421 Mich 338; 365 NW2d 120 (1984). In that case, the Supreme Court held that evidence that is excluded by the rape-shield statute may be admissible if required to allow the defendant "a reasonable opportunity to test the truth of a witness' testimony," as guaranteed by the Confrontation Clause. *Id*. at 347. The Court gave three examples of when a defendant's constitutional right to confrontation requires admission of evidence otherwise barred

---

[2] Indeed, defendant testified at the preliminary examination that complainant had "offered [him] oral sex for free" and that on the night of the offense he "asked for the oral sex offer from our past."

by the rape-shield statute: (1) "for the narrow purpose of showing the complaining witness' bias"; (2) when the evidence is probative of "a complainant's ulterior motive for making a false charge"; and (3) "to show that the complainant has made false accusations of rape in the past." *Id*. at 348. The Court added that "[i]n exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id*. at 349.

In this case, defendant does not explain how evidence of complainant's reputation as a prostitute, her past rapes, or sexual conduct with another man was necessary to preserve his constitutional right to confront complainant. He does not contend that this evidence is an indication of bias against him, that complainant had an ulterior motive or that she had made false accusations in the past. Instead, defendant argues that the preclusion of the evidence violated his constitutional right to present a defense. See *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009) ("This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense.").

As discussed, defendant's proffered theory of the case was that a man came over to complainant's home when defendant was there; that while complainant and the man were in another room complainant yelled "help me"; that complainant and the other man had sex; and that when complainant emerged from the room she had a bump on her forehead. Defendant also asserts that testimony that complainant is a prostitute was necessary to give context and credibility to this version of events. The prosecution maintains that defendant could have, but chose not, to present other evidence regarding the third party, i.e., that complainant had a bump on her head after going in a different room with the third party. Indeed, the trial court precluded defendant only from offering evidence of a "a third party's sexual acts" and reminded defendant before his testimony that he could not testify to "testify about her being a prostitute, having sex, or being raped by another person." Defense apparently concluded that testimony about the third party was not helpful in absence of evidence that complainant had sex with the third party and was a prostitute,[3] which indicates that defendant was attempting to introduce the evidence for the improper purposes of impeaching complainant and placing her character into question. For these reasons, the trial court did not abuse its discretion by precluding admission of the evidence covered by the rape-shield statute and defendant was not denied his right to present a defense.

---

[3] It is unclear what defendant would have testified to regarding complainant and the third party. When the trial court was explaining its decision to grant the prosecutor's motion in limine to defendant, the court asked, "[Y]ou stated that there was another man that had sex with the alleged victim; is that correct?" Defendant answered, "Oh yeah. Well, I—I—I never said that—well, yeah, I—I said that—that she told me that she got raped twice." Further, defendant testified at trial that complainant had her injuries when he arrived at her home, which is inconsistent with his testimony at the preliminary examination that he saw the bump on complainant's head after she met with the third party.

Defendant next argues that the DNA analysis was not covered by the rape-shield statute. Defendant relies on *Sharpe*, 502 Mich at 324, in which the prosecution sought to admit evidence of the 14-year-old complainant's lack of other sexual partners, pregnancy and abortion. The Supreme Court held that the evidence was not covered by the rape-shield statute and that it was admissible under MRE 402 (relevancy) and MRE 403 (unfairly prejudicial) [4] because of its high probative value. *Id*. at 326-334. The Court explained:

> The evidence of [the complainant's] pregnancy and abortion definitively demonstrates that sexual penetration occurred. If the jury finds credible [the complainant's] testimony that she did not engage in sexual intercourse with anyone other than defendant through November 2014, that testimony proves that defendant was the man who sexually assaulted [the complainant]. [*Id*. at 333.]

*Sharpe* thus stands for the unremarkable proposition that evidence of the defendant's guilt voluntarily offered by the complainant is not precluded by the rape-shield statute, the purpose of which is "to prevent unwelcome and unnecessary inquiry into a complainant's sexual activities, thereby protecting the complainant's privacy and protecting the complainant from suffering unfair prejudice based on her sexual history." *Id*. at 330-331. By contrast, defendant sought to admit DNA evidence from which he would have asked the jury to infer that complainant engaged in sexual conduct with someone other than defendant, i.e., a specific instance of sexual conduct that it is generally barred by the rape-shield statute. Defendant maintains, however, that the DNA evidence is similar to evidence of a pregnancy and abortion, which *Sharpe* reasoned were evidence that sexual activity occurred but were not, in and of themselves, specific instances of sexual conduct. See *id*. at 328. Even assuming that *Sharpe* compels the conclusion that DNA evidence— regardless of the purpose for which the defense seeks to use it—does not fall within the scope of the rape-shield statute, the evidence would still have been inadmissible pursuant to MRE 402 and MRE 403. We fail to see how the fact that complainant had sex with another man bears on the question whether *defendant's* actions occurred with the consent of the complainant. And as already discussed, such evidence would have been highly prejudicial.

Finally, even if preclusion of the DNA evidence was error it would not require reversal because it could not have affected the outcome of the trial.[5] The record reveals little about the

---

[4] MRE 402 states in part: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[5] MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an

DNA other than its presence. The report indicated only that the DNA was from an "unidentified, unrelated individual." The report did not indicate that it came come from a male donor, or from semen or that it demonstrated sexual activity at the time defendant asserts it occurred. And as we just noted, even assuming that the DNA was semen from the claimed third party, the evidence had limited, if any, relevance to the defense's theory of consent. For these reasons, defendant fails to establish that admission of the DNA evidence, if erroneous, would more likely than not have led to a different outcome at trial.

## B. STANDARD 4 BRIEF

In a Standard 4 supplemental brief, defendant also argues that there was insufficient evidence presented at the preliminary examination to justify bindover to the circuit court; he was entitled to a directed verdict because the prosecution's case was based on insufficient evidence; the police officer's testimony was hearsay because he was not wearing a body camera; and the trial court failed to instruct the jury on the reasonable-doubt standard.[6]

Because defendant was convicted in a jury trial, any claims related to the bindover from district court to the circuit court are irrelevant. See *People v Bosca*, 310 Mich App 1, 45; 871 NW2d 307 (2015) ("If a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover.") (quotation marks and citation omitted). As to the sufficiency of the evidence at trial, in CSC cases, the victim's testimony is enough and does not require corroboration. See MCL 750.520h; *People v DeLeon*, 317 Mich App 714, 719; 895 NW2d 577 (2016). We will not second guess the jury's credibility determinations. See *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). A conviction of

---

examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

To properly apply the harmless-error test in a criminal proceeding, this Court must determine whether the error was constitutional or nonconstitutional. See *People v Cornell*, 466 Mich 335, 363; 646 NW2d 127 (2002). "Evidentiary errors are nonconstitutional." *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "[I]f the issue is preserved, the defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

[6] To preserve most claims of error, a party must object below. See *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Defendant did not object to the admissibility of the police officer's testimony or to any issues related to the jury instructions. Therefore, those claims of error are unpreserved. However, "[c]riminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). We review unpreserved errors for plain error affecting substantial rights. See *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). We review de novo challenges to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*.

CSC-I, in the circumstances relevant in this case, requires proof that the actor engaged in sexual penetration with another person, causing injury, and using force or coercion. MCL 750.520b(1)(f). Evidence admitted at trial unquestionably supported all of these elements.

Next, defendant attempts to characterize the testimony of a police officer as hearsay simply because he was not wearing a body camera at the time of the incident. This argument is without merit. The officer was not asked about a body camera, and he did not mention whether he was wearing one. The officer testified at trial consistent with the Rules of Evidence.

Finally, defendant's argument that the trial court failed to instruct the jury on the reasonable-doubt standard is also baseless. We have reviewed the jury instructions and find no support for defendant's claim. Because there was a proper instruction, defendant's argument that his attorney failed to object to the trial court's instruction is similarly without merit.

Affirmed.


/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering